# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 04-2992 & 04-3120

AMERICAN NATIONAL BANK AND TRUST
COMPANY OF CHICAGO, as Trustee f/b/o
Emerald Investments LP; and EMERALD
INVESTMENTS LP, an Illinois Partnership,

*Plaintiffs-Appellees/Cross-Appellants*,

*v.*

EQUITABLE LIFE ASSURANCE SOCIETY OF
THE UNITED STATES,

*Defendant-Appellant/Cross-Appellee.*

———————

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 00 C 6786—**Charles P. Kocoras**, *Chief Judge.*

———————

ARGUED JANUARY 14, 2005—DECIDED MAY 4, 2005

———————

Before RIPPLE, MANION, and KANNE, *Circuit Judges.*

MANION, *Circuit Judge.* The Equitable Life Assurance
Society of the United States invoked the attorney-client
privilege to protect a large number of documents during

discovery and used a privilege log to inform its opponent, Emerald Investments LP, of the documents being withheld. On Emerald's motion, however, a magistrate judge struck Equitable's entire privilege log as a discovery sanction because Equitable left five non-privileged documents on its log, which included more than 400 documents. The sanction forced Equitable to disclose all the log documents irrespective of whether the attorney-client privilege actually applied. Equitable filed objections, but the district court overruled them. After the action was dismissed, Equitable appealed the sanction. Because the imposition of the sanction constitutes an abuse of discretion, we reverse the sanction and remand the matter with instructions for Emerald to return the pertinent documents to Equitable. We affirm, on the other hand, the district court's denial of Emerald's separate motion for additional discovery sanctions, in the form of attorneys' fees and costs, against Equitable.

## I. Background

Relying on diversity jurisdiction, Emerald sued Equitable in the Northern District of Illinois, alleging a number of state contract and tort claims. There are additional parties on both sides, but there is no need in this appeal to discuss them. Equitable and Emerald entered into a contract under which Equitable sold annuities to Emerald. Emerald then traded these annuities with third parties. Displeased, Equitable then took steps to restrict Emerald's sub-trading. The core dispute was whether the contract gave Emerald the unlimited right to engage in such sub-trading. This appeal, however, only concerns a discovery sanction and not the underlying claims.

**A. Privilege Log Proceedings**

The district court referred all discovery matters to a magistrate judge under Federal Rule of Civil Procedure 72(a). The discovery proceedings that form the basis of this appeal are cumbersome, but the detailed discussion of those proceedings that follows is a prerequisite to explaining why and how the magistrate judge (and thereby the district court) abused his discretion in sanctioning Equitable.

During discovery, Equitable produced more than 20,000 documents but initially withheld approximately 750 documents, asserting the attorney-client privilege. Equitable submitted a privilege log listing the withheld documents. Based on Equitable's descriptions of the withheld documents, Emerald challenged the privilege log, suspecting that some documents were not privileged. Specifically, on December 6, 2001, Emerald moved to strike the log and requested that all non-privileged documents on the log be disclosed. At a hearing on December 11, 2001, the magistrate judge expressed concern about having to review a large number of documents *in camera*,[1] and Equitable conceded the need to improve its document descriptions and revise the log.

Equitable submitted an amended privilege log on December 27, 2001. Unsatisfied, Emerald moved, on January 4, 2002, to strike the amended log and to compel production of all non-privileged documents on the log. Shortly before the January 9, 2002, hearing on the motion, Equitable volunteered a second-amended privilege log to address Emerald's

---

[1] For instance, the magistrate judge said to Equitable: "[I]f you think I'm going to go through 1500 documents, read them all, and decide from this kind of stuff, you are mistaken. . . . I'm not going to allow somebody to put me in a position where I'm going to be reading documents *in camera*." R.91-1 at 4-5.

concerns. In these logs, Equitable was tackling privilege issues involving in-house counsels, their notes, their e-mails, and fine line distinctions between legal and nonlegal (i.e., business) advice. At the hearing, Emerald balked at the second-amended log, and the magistrate judge required Equitable to produce a third-amended privilege log.

Five days later, Equitable submitted the third-amended log. At a status hearing on January 18, 2002, Emerald informed the magistrate judge that it had some qualms about the third-amended log but reported that it was pleased with Equitable's willingness to work with Emerald to resolve its remaining concerns. The magistrate judge therefore instructed the parties to continue to meet and confer on the matter. By this juncture, Equitable had reduced the log to some 465 entries, about a half box of documents.

The spirit of cooperation was short-lived. At a hearing on February 8, 2002, Equitable sought the return of certain documents that it had inadvertently produced, i.e., privileged documents mistakenly released to Emerald. That narrow issue spilled over into a larger debate about Equitable's third-amended log and about when e-mails to an in-house counsel are protected by the attorney-client privilege. One document sparked the debate (and is illustrative of the privilege issues that led to this appeal). The document was an e-mail to an in-house counsel recounting a high-level meeting between Equitable and Emerald. Equitable viewed the e-mail as a confidential communication seeking legal advice. The magistrate judge disagreed, ruling that the document was not privileged, and, as a result, denied the request for the document to be returned. Emerald seized this opportunity to raise concerns about Equitable's ability to evaluate the other documents still listed on the third-amended log. Emerald expressed a lack of confidence in Equitable and its log as a whole. However, at the previous

hearing, the magistrate judge had again expressed reluctance at a full, document-by document, *in camera* review. Emerald thus asked the magistrate judge to review, not the half box of documents that remained, but rather a sample of the documents *in camera* to check and see if all non-privileged documents had been purged. Under the proposal, the magistrate judge would review every fifteenth document on the log until he reached a total of ten documents. The magistrate judge adopted the proposal.

The magistrate judge announced his results on March 20, 2002, in a written opinion. Equitable properly claimed the privilege in six of the ten documents and in portions of two others. However, the magistrate judge also found that two full documents were not privileged. The ten-document sample was composed of e-mails, handwritten notes, and the like, involving in-house counsels. The magistrate judge closely parsed these documents. For example, he found that one e-mail—authored by an in-house counsel and sent to several Equitable employees, including two other in-house counsels—was privileged but that nine handwritten words by an in-house counsel on a copy of the e-mail were not privileged because it appeared that the handwritten words were not shared with anyone and did not concern legal advice. The magistrate judge then ordered Equitable to disclose the non-privileged material.

At another status hearing on March 27, 2002, Emerald made an oral motion to strike the third-amended log and to order Equitable to disclose each document—non-privileged as well as privileged—on the log. Emerald argued for this global disclosure by again claiming that the log as a whole was unacceptably tainted by erroneous assertions of privilege, citing the February 8 and March 20 rulings for support. To further bolster its proposal, Emerald allied itself with the magistrate judge's previously expressed reluctance

for full *in camera* review, claiming that inspecting all the documents would be an "outrageous task." R.181 at 13. The magistrate judge declined global disclosure but required Equitable to produce a fourth-amended privilege log, encouraging Equitable to reduce the number of log entries. However, with an eye on the future, the magistrate judge agreed with Emerald's comments about *in camera* review and stated: "I don't think I'm going to be prepared to go through 400 documents." *Id.* at 17.

Equitable submitted the fourth-amended log on April 19, 2002, and disclosed a number of additional documents, thereby reducing the number of log entries to 432. Unappeased, Emerald immediately began insisting on a global disclosure of each document on the log at the next status hearing on April 22, 2002. Emerald again claimed a lack of confidence in the log and orally moved to strike it based upon Equitable's past performance. Emerald's counsel requested additional sampling, telling the magistrate judge: "[O]bviously, I don't think you need or should sit down and go through 432 documents." R.147 at 11. To which the magistrate judge responded: "Well, I'm not going to." *Id.* Equitable countered Emerald's position by arguing that it should not be forced to disclose indisputably privileged material (such as the documents from the March 20 opinion that the magistrate judge found to be completely privileged) simply because the magistrate judge disagreed with Equitable's good-faith assertions of the privilege for another document. The magistrate judge, wanting to see if Emerald had concrete problems with the new log (as opposed to problems with Equitable's past performance), declined to sample or strike the log at that juncture and instead required both sides to confer with each other on any specific problems identified in the new log and report back.

At yet another status hearing on May 9, 2002, Emerald reported concerns over a number of entries on the fourth-amended log. Realizing that, in light of his prior comments, the magistrate judge was inclined against full *in camera* review, the parties proposed the following procedure to resolve Emerald's concerns: Emerald would move to compel the production of ten or fifteen documents and then the magistrate judge would review that limited number *in camera*. On May 20, 2002, Emerald filed its motion to compel, requesting sixteen documents. After Emerald filed the motion, Equitable released two of the sixteen, believing that the two were privileged but deciding to waive the privilege as a good-faith effort to help bring an end to the matter. On June 5, 2002, the magistrate judge ruled from the bench on the remaining fourteen documents and found eight to be privileged, two to be partially privileged, and four to be non-privileged. He then ordered the production of the non-privileged material. The matter appeared to be at an end.

However, still dissatisfied with these partial disclosures, Emerald resurrected its complaints about the entire log weeks after the June 5 ruling and again pressed for global disclosure. It did so on July 25, 2002, by filing a motion for discovery sanctions under Federal Rules of Civil Procedure 26 and 37. Emerald reasoned that disclosure of every document without further review was an appropriate sanction in part because, with more than 400 documents at issue, "any plenary *in camera* inspection [by the magistrate judge would be] completely unmanageable." R.186 at 15. Nevertheless, in addition to the global-disclosure sanction, Emerald alternatively asked that the magistrate judge appoint a special master to review the remaining documents at Equitable's expense.

The magistrate judge did not pursue the special master alternative. Rather, at the August 14, 2002, hearing on the

motion, the magistrate judge *sua sponte* formulated his own procedure to determine if he would impose the global-disclosure sanction: Emerald would select twenty of the remaining documents on the fourth-amended log and then Equitable would submit those twenty for *in camera* review. This was not a random sample; every document that had not already been reviewed *in camera* was fair game. Then, if the magistrate judge found four or more of the twenty to contain non-privileged material, he would sanction Equitable by ordering a disclosure of every document remaining on the log. On the other hand, if he found three or fewer to contain non-privileged material, he would deny Emerald's motion.

Two days later, Equitable moved to amend the magistrate judge's procedure, arguing in part for the special master alternative. Further, since much had happened since the fourth-amended log was submitted on April 19, Equitable requested an opportunity to evaluate the log in light of all the post-April 19 developments so as to prevent Emerald from unfairly taking advantage of the magistrate judge's sanction procedure and gaining a windfall of privileged material. On August 27, 2002, the magistrate judge rejected Equitable's requests from the bench, refusing all alternatives and marching forward with his sanction procedure from the August 14 hearing.

After some more wrangling and two additional hearings, the magistrate judge announced his decision on the record on September 23, 2002. He first ruled that four documents were not protected by the attorney-client privilege but that the other sixteen were. Curiously, he then denied Emerald's motion, stating that he would not sanction Equitable because he believed that his August 14 ruling was that "four and no more" equaled no sanction. R.228 at 3-4. Emerald challenged the magistrate judge's recollection, accurately

stating that the rule was, if there were four or more non-privileged documents, "we get everything." *Id.* After a recess, the magistrate judge corrected his error and included a fifth document on the list of the non-privileged. The magistrate judge thus reversed his earlier ruling and granted the motion, ruling that he could not "rely on the integrity" of the log. *Id.* at 7. To support his sanction, the magistrate judge only offered the following:

> The Court is very well aware of the fact that, generally speaking, a finding of bad faith is required to strike an entire privilege log. The Court has no direct information that [Equitable] is dealing in bad faith, but the Court draws the inference from a total of five privilege logs on which a sampling showed at least 25 percent of the privilege log being non-privileged[;] the Court infers bad faith from that statistic, especially in view of the known professional competence of the attorneys for [Equitable]. They know what they're doing . . . . [T]herefore[,] the entire privilege log is stricken and the order is that all the documents listed on the privilege log shall be disclosed.

*Id.* at 7-8. This disclosure was to include thirty-three documents that the magistrate judge himself found to contain privileged material: eight from his March 20 ruling, ten from his June 5 ruling, and fifteen from his September 23 ruling.

Equitable protested the inference of bad faith, the privilege rulings on the individual documents, and, as it had done before, the sanction procedure, contending that it was being unjustly penalized for good-faith differences of opinion on the applicability of the privilege in the difficult area of material involving in-house counsels. Equitable raised these arguments at the September 23 hearing, in its motion for reconsideration, at the September 27, 2002, hearing on

the motion for reconsideration, in its objections to the district judge, and at the October 16, 2002, hearing on the objections, all to no avail. Ultimately, after exhausting all avenues by the end of October 2002, including an unsuccessful mandamus petition to this court, Equitable released the documents to Emerald.

## B.  Post-Privilege Log Proceedings and Dismissal

Long after the privilege log saga had closed, Emerald discovered that complete diversity of citizenship was lacking for its action brought under 28 U.S.C. § 1332. Emerald, a limited partnership, realized in 2004 that, at the time it filed the suit in 2000, one of its limited partners was a trust that had one trustee who was a citizen of New York. Emerald was thus a citizen of New York. Equitable also happened to be a citizen of New York, and, therefore, there was no subject matter jurisdiction.

By the time Emerald discovered its error, the one non-diverse individual no longer served as a trustee for the trust/limited partner at issue and was replaced by a diverse individual. Accordingly, at that point, Emerald was no longer a citizen of New York. Emerald decided to address its jurisdictional dilemma by filing a new civil action that was substantively similar to the "original action" but which accurately invoked diversity jurisdiction. Emerald's "new action" is currently pending before the same district court and the same magistrate judge.

Additionally, there is another related case pending before the same district court and magistrate judge. Early in the original action, Equitable attempted to file a counterclaim against Emerald; however, the filing was untimely, and the district court denied Equitable leave to file an untimely counterclaim. Equitable then filed a separate civil action

against Emerald, alleging that Emerald fraudulently induced Equitable to enter into the contract in question. We will refer to Equitable's action as the "counter action."

Turning back to the original action (which is the only action on appeal), the district court dismissed it, without prejudice, for lack of subject matter jurisdiction two weeks after Emerald instituted the new action. The district court's order of dismissal and accompanying judgment explicitly stated that "the complaint and suit are dismissed, without prejudice." R.471.

At the time of dismissal, the district court also terminated all pending motions in the original action, including one that will be of import below: Emerald's "motion for reasonable expenses regarding the privilege log motions and related events." That motion sought an additional discovery sanction against Equitable and claimed more than $235,000.00 in attorneys' fees and costs incurred during the privilege log proceedings. Emerald filed the motion nearly seventeen months after the magistrate judge had struck Equitable's privilege log, which is why the motion was still pending in 2004 when the action was dismissed.

Viewing the dismissal as a final decision from which it could appeal the magistrate judge's sanction and the corresponding denial of its objections to the sanction under 28 U.S.C. § 1291, Equitable filed this appeal. In response, Emerald, in addition to defending the sanction, argues that we lack jurisdiction to hear the appeal. In the event we reject its jurisdictional attack, Emerald has cross-appealed the denial of its motion for reasonable expenses. We will first address jurisdiction and then turn to the substance of the appeal and cross-appeal.

## II. Jurisdiction

Before turning to Emerald's specific challenges, we initially note that, although subject matter jurisdiction turned out to be lacking for this particular action, we still have the authority to adjudicate matters regarding sanctions. *See Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992); *Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1193, 1196 (7th Cir. 1996).

Emerald advances three jurisdictional arguments. It contends that the dismissal was not a final decision for § 1291 purposes because, first, the district court dismissed the original action without prejudice and, second, the new and counter actions remain pending before the district court. Third, Emerald raises a broader case-or-controversy concern, arguing that the dismissal did not aggrieve Equitable. We will address each issue in turn.

First, Emerald's focus on the "without prejudice" language in the district court's order of dismissal and judgment is misplaced. "The inquiry is not, as [Emerald] suggests, whether a dismissal is with prejudice or not." *Trippe Mfg. Co. v. Am. Power Conservation Corp.*, 46 F.3d 624, 626 (7th Cir. 1995). Rather, "[t]he jurisdictional question in this case . . . turns on whether the district court dismissed . . . [Emerald's] action" as opposed to just its complaint. *Benjamin v. United States*, 833 F.2d 669, 671 (7th Cir. 1987). Because, unlike the dismissal of a complaint, which can ordinarily be amended, the "dismissal of the entire action ends the litigation" and, therefore, permits an appeal under § 1291.[2] *Paganis v. Blonstein*, 3 F.3d 1067, 1070 (7th Cir. 1993); *see also Hoskins v. Poelstra*, 320 F.3d 761, 763-64 (7th Cir. 2003). "The test for

---

[2] 28 U.S.C. § 1291: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States."

finality is not whether the suit is dismissed with prejudice or without prejudice, on the merits or on a jurisdictional ground or on a procedural ground . . . . The test is whether the district court has finished with the case." *Hill v. Potter*, 352 F.3d 1142, 1144-45 (7th Cir. 2003).

Here, the district court has unquestionably finished with the original action. The order of dismissal and the judgment dismissed the "complaint" and the "*suit.*" By contrasting the word "suit" against the word "complaint" in this context, the district court unequivocally indicated that this civil action was terminated *in toto*. This conclusion is bolstered by a passage in the order of dismissal stating that "this case must be dismissed *in its entirety.*" R.471 at 6 (emphasis added). *See Willhelm v. E. Airlines, Inc.*, 927 F.2d 971, 972 (7th Cir. 1991) ("We have jurisdiction over this appeal only if the district court has terminated the litigation *in its entirety.*" (emphasis added)).

Furthermore, it was necessary for the district court to dismiss the original action in its entirety as it was infected with an incurable jurisdictional defect—amending the complaint would not have overcome the want of complete diversity at the commencement of the original action. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 124 S. Ct. 1920, 1924 (2004); *Johnson v. Wattenbarger*, 361 F.3d 991, 992 (7th Cir. 2004). As a result, the original action was "dead," *Hoskins*, 320 F.3d at 763-64; "nothing more [was] ever [going to] happen" on the merits of Emerald's underlying claims within confines of the original action, *TDK Elecs. Corp. v. Draiman*, 321 F.3d 677, 678 (7th Cir. 2003). The district court did not employ the words "without prejudice" to enable a continuation of the original suit at some future date; rather, the district court used those words so as not to impede Emerald's ability to present its underlying claims in a new and independent action (of which the privilege log sanction

would not be a constituent part). *See Farrand v. Lutheran Bhd.*, 993 F.2d 1253, 1254 (7th Cir. 1993). Contrary to Emerald contention, moreover, the fact "[t]hat the dismissal was without prejudice to filing another suit does not make the cause unappealable, for denial of relief and dismissal of the case ended this suit as far as the District Court was concerned." *United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 794-95 n.1 (1949); *see also Hill*, 352 F.3d at 1144-45. In short, the district court "made it clear that he has washed his hands of the case, [and] the resolution is as final as it can be" for purposes of § 1291. *TDK Elecs.*, 321 F.3d at 678; *see also Hill*, 352 F.3d at 1144-45; *Banks v. Sec'y of Ind. Family & Soc. Servs. Admin.*, 997 F.2d 231, 237 (7th Cir. 1993).

Second, the fact that new and counter actions remain pending before the district court does not alter the finality of the judgment in the original action. Relying exclusively on *Sandwiches, Inc. v. Wendy's International, Inc.*, 822 F.2d 707 (7th Cir. 1987), Emerald contends that, since there are similar legal and factual issues in each of the three actions (i.e., the original, new, and counter actions), Equitable must wait to appeal the privilege log sanction until the new and counter actions are fully adjudicated by the district court. Emerald, however, completely misreads *Sandwiches*.

*Sandwiches* stands for the principle that when a district court ambiguously consolidates two civil actions by failing to specify whether they are fully consolidated (i.e., consolidated for every purpose) or partially consolidated (i.e., consolidated only for a limited purpose, such as discovery), then this court will treat the two actions as fully consolidated so long as the two are "sufficiently closely related." *Id.* at 709-10. The consequence of full consolidation is that the two "become a single judicial unit for purposes of [Federal Rule of Civil Procedure] 54(b), and accordingly a judgment that does not dispose of all claims of all parties is

not appealable unless the district court makes the findings required by Rule 54(b)."[3] *Brown v. United States*, 976 F.2d 1104, 1107 (7th Cir. 1991).

Here, however, there was no ambiguous consolidation as there was in *Sandwiches*. Rather, *there was no consolidation—at all—not even for a limited purpose*. Although there are overlapping factual and legal issues among the three actions and while there has been some informal merger of proceedings, e.g., joint hearings held, there has been no formal consolidation. In fact, the district court, in the order dismissing the original action, explicitly rejected the possibility of consolidation.[4] Absent any consolidation, the original action is thus a wholly independent, free-standing civil action. *Sandwiches* expressly addressed the distinction between the situation in that case from the situation here: the court explained that when two related cases have not been consolidated for any purpose, a party could appeal the judgment in one of the cases "notwithstanding the link between" the two related

---

[3] Fed. R. Civ. P. 54(b): "When more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

[4] The order of dismissal stated: "As this case must be dismissed in its entirety, *clearly it cannot be consolidated with another case.*" R.471 at 6 (emphasis added).

cases and the fact that the other related case remains pending before the district court. 822 F.2d at 710. Consequently, the rule from *Sandwiches* for handling ambiguous consolidations is thoroughly inapplicable here. Equitable does not have to wait to appeal the privilege log sanction until the district court is finished with the new and counter actions. Since the sanction is a component of no other action but the original action, the time to appeal the sanction was when the original action became final.

Third, Emerald's argument about Equitable not being aggrieved is also meritless. Assuredly, a defendant, such as Equitable, is not aggrieved by the dismissal of a suit against it. The dismissal, however, is not the subject of this appeal. Rather, the dismissal is the final-decision vehicle that enables Equitable to appeal the global-disclosure sanction, which certainly did aggrieve Equitable and continues to do so. An appeal of a final decision "brings up" for review all interlocutory decisions of the district court that were adverse to the appellant and that have not become moot. *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 626 (7th Cir. 2003); *Alejo v. Heller*, 328 F.3d 930, 935 (7th Cir. 2003); *Cleveland Hair Clinic, Inc. v. Puig*, 104 F.3d 123, 126 (7th Cir. 1997) (sanction at issue). "Otherwise there would be no way to obtain appellate review of those rulings, save for the exceptional few that were appealable regardless of finality." *Bastian v. Petren Res. Corp.*, 892 F.2d 680, 682-83 (7th Cir. 1990).

Moreover, appellate review of a sanction does not depend on which party ultimately prevailed in the final decision of the lawsuit. One could win a huge triumph on the merits and still appeal an adverse sanction suffered along the way. That is because "when [one is] sanctioned in the course of litigation, immediate [satisfaction] of the sanction is the cost [one] must bear for the privilege of continuing to litigate.

The propriety of the sanction may then be challenged on appeal once there is a final decision in the case, even if that is long after the sanction was [satisfied]." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1057 (7th Cir. 1998). Furthermore, satisfaction "of the sanction does not moot the appeal because the appellate court can fashion effective relief to undo the sanction or at least mitigate the lasting adverse effects of the sanction; for instance, in this case, we could order that the documents be returned. *Id.*

Here, the sanction was (and is) adverse to Equitable: the sanction forced Equitable to turn over privileged information to its litigation adversary.[5] Further, that decision is not moot: as the result of the sanction, Equitable labors under a "lingering disability" from the judgment in the original action in that its adversary continues to possess sensitive and indisputably privileged information. *D.S.A. v. Circuit Ct. Branch 1*, 942 F.2d 1143, 1146 (7th Cir. 1991). For instance, at oral argument, Equitable informed us that one document released to Emerald under the sanction is an in-house counsel's legal memorandum advising Equitable on the merits of Emerald's underlying contract and tort claims that are now at issue in the new action. Sufficient adversity is present when a litigant's scouting report is in the hands of its opponent. Moreover, Equitable indicated that Emerald has used such sensitive information against Equitable. According to Equitable, it sees its documents every time Emerald files a substantive motion: Emerald uses Equitable's

---

[5]  Equitable's involuntary disclosure of privileged information to Emerald does not constitute a waiver of the privilege. *See* Paul R. Rice, 2 *Attorney-Client Privilege in the United States* § 9:25 (2d ed. 2004) ("courts generally hold that when production of privileged communications is judicially compelled, compliance with the order does not waive the attorney-client privilege").

in-house counsels' evaluation of the lawsuit as support for Emerald prevailing on the underlying claims. Therefore, because the sanction continues to adversely affect Equitable, the sanction presents a live controversy to be resolved in this appeal.

Satisfied that we have jurisdiction to hear this appeal, we now review the global-disclosure sanction imposed against Equitable.

### III. Analysis of Equitable's Appeal

In challenging the sanction, Equitable has not asked us to rule on the magistrate judge's privilege decisions on the five documents that immediately resulted in the global-disclosure sanction or any other privilege decisions that led to the sanction proceedings. Rather, Equitable's attack on the sanction is foundational. Equitable challenges the magistrate judge's procedure from which he inferred bad faith and then imposed the sanction.

Discovery "sanctions may only be imposed where a party displays wilfulness, bad faith, or fault." *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997). Here, the magistrate judge was silent on wilfulness and fault, addressing only bad faith. "Discovery sanctions are reviewed for an abuse of discretion." *Maynard v. Nygren*, 372 F.3d 890, 892 (7th Cir. 2004). While deferential, "this standard is not without teeth." *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 737 (7th Cir. 1998). A district "court [does not] possess[ ] unfettered discretion to impose sanctions upon a recalcitrant party." *In re Golant*, 239 F.3d 931, 937 (7th Cir. 2001). Accordingly, the method for arriving at the sanction must be fair. *See Salgado*, 150 F.3d at 740 ("[W]e must . . . scrutinize the district court's methodology. Although the district

courts have significant flexibility in the application of the [discovery] rules in question, that latitude is clearly constrained by the principles of due process of law."). The upshot is that, under the abuse of discretion standard, we will reverse a discovery sanction if its imposition "strikes us as 'fundamentally wrong,' or is 'clearly unreasonable, arbitrary, or fanciful.' " *Maynard*, 372 F.3d at 893 (quoting *Anderson v. United Parcel Serv.*, 915 F.2d 313, 315 (7th Cir. 1990)).

The process for winnowing down the number of privileged documents was tedious and protracted. But the final test to determine whether Equitable's claim that some 400 documents were privileged was clearly not fair. The magistrate judge's sampling procedure to determine bad faith was too arbitrary to be accurate and with a consequence that was onerous. At the August 14 hearing, the magistrate judge set forth his procedure in the following terms:

> So here's what we're going to do. [Emerald] is going to select 20 documents, any 20 documents of the existing privilege log. They will be submitted *in camera*. If 20 percent or more are deemed to be non-privileged, then the Court will therefore find that . . . the entire Fourth Amended Privilege Log is tainted. That's 20 percent or more, 20 percent of 20 is four. . . . *I understand that there are good faith differences of opinion.* . . . [However,] considering the intense spotlight on this privilege log issue for the last few months, *there cannot be more than three out of 20 that there is a good faith difference of opinion.* If more than three are found by the Court to be non-privileged, then the entire privilege log will be stricken and all of the documents will be ordered to be produced.

R.202 at 31-32 (emphasis added). Further, before imposing the sanction at the September 23 hearing, the magistrate judge admitted that he had "no direct information [of] bad faith." R.228 at 7.

This process allowed Emerald to pick the twenty documents it deemed to be most vulnerable to challenge. Then, if the court found four or more in that group that it judged not to be privileged, the whole lot would be stricken from the privileged list. He found five, and Equitable was sanctioned for having too many good-faith differences of opinion with the magistrate judge. That is unacceptable. Simply having a good-faith difference of opinion is not sanctionable conduct. That especially holds true in this situation. Because the attorney-client privilege promotes full and frank communication between those in need of legal assistance and their advocates, courts have long recognized the vital role the privilege plays in the administration of justice. *See Hunt v. Blackburn*, 128 U.S. 464, 470 (1888); *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000). As candid attorney-client communications are therefore "worthy of maximum legal protection," it is expected that clients and their attorneys will "zealously" protect documents believed, in good faith, to be within the scope of the privilege. *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 90 (3d Cir. 1992). Which, as acknowledged by the magistrate judge in the block quotation above, is what Equitable did here. Equitable sought to protect documents for which a good-faith argument in support of privilege could be made,[6] and it did so while treading in an area of

---

[6]  For example, two of the five documents that triggered the sanction were handwritten notes from meetings with in-house counsel concerning Equitable's response to Emerald's sub-trading

(continued...)

privilege law that is generally recognized to be "especially difficult," namely, distinguishing in-house counsels' legal advice from their business advice. Rice, 1 *Attorney- Client Privilege in the United States* § 5:7. Furthermore, Equitable exhibited good faith throughout the privilege log proceedings: among other acts, Equitable conceded the need to revise its initial log; it volunteered a second-amended log; it cooperated with Emerald to resolve outstanding disputes, as Emerald acknowledged in January 2002; it waived the privilege for two documents in May 2002 to help close the matter; and, it promptly complied with the magistrate judge's orders for the disclosure of documents and for amended logs. Accordingly, given the absence of bad faith, wilfulness, or fault, Equitable should not have been sanctioned. The sanction must be reversed. The magistrate judge's fundamental error was estimating bad faith from good-faith assertions of the privilege.

Additionally, as noted above, the magistrate judge's sanction procedure was inherently "arbitrary." *Maynard*, 372 F.3d at 893. Selecting twenty documents from a list and then applying a 20% (four documents) error rate has no logical foundation. The magistrate judge left the composition of the sample entirely up to Emerald's unrestricted discretion. As a result, there is no reason to believe that the twenty documents selected were representative of the entire log. In

---

(...continued)

activity. Including those documents in the fourth-amended log was a good-faith assertion of privilege because, under certain circumstances, when legal matters are at issue, notes of meetings with counsel have been held to be privileged. *See, e.g., Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 376 (N.D. Ill. 2000); *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 192 F.R.D. 263, 270 (N.D. Ill. 2000).

fact, it is likely that the sample was unrepresentative because, given the possibility of a windfall, Emerald had every incentive to cherry-pick the most vulnerable documents: if it could just find four documents out of more than 400, Emerald would "get everything." R.228 at 4. Therefore, even had Equitable engaged in sanctionable conduct, we would still reverse the sanction as impermissibly arbitrary, with an extremely harsh result.

This severe sanction developed from only a half box of documents. The magistrate judge's continued refusal of a full, document-by-document, *in camera* inspection was not helpful. By effectively taking full *in camera* review off the table, the magistrate judge created a situation that got out of hand: with that option unavailable, the magistrate judge inevitably struggled to find a way of fairly resolving the parties' privilege disputes. The result was the flawed sampling procedure for sanctioning Equitable. To avoid this unfortunate situation, while still addressing Emerald's privilege concerns, the magistrate judge should have reviewed more documents *in camera* than the total of forty-four reviewed for his March 20, June 5, and September 23 rulings. The quantity of log documents was down to a half box by February 8, and, on that date, when Emerald proposed the first sampling procedure, it was evident that Emerald lacked confidence in the log as a whole. As early as that juncture or certainly by the time the sanction proceedings began, the magistrate judge, given the manageable quantity of documents at issue, should have simply instituted a procedure by which he would review (himself or through a special master) every document contested by Emerald— *even if that meant reviewing every document in that half box. See In re BankAmerica Corp. Secs. Litig.*, 270 F.3d 639, 644 (8th Cir. 2001) ("[D]istrict courts should be highly reluctant to order disclosure without conducting an *in camera* review of

allegedly privileged materials.").[7] Such a process would have struck the right balance between the parties' competing interests and would have—given the protracted log proceedings that continue to this day—saved judicial resources. *See Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 405 (1976) ("[A]n *in camera* review of the documents is a relatively costless and eminently worthwhile method to insure that the balance between petitioners' claims of . . . privilege and plaintiffs' asserted need for the documents is correctly struck."). In short, rather than resorting to an ill-advised sanction and imprudent sampling procedure, a full *in camera* review of the log documents would have been "a highly appropriate and useful means of dealing with" the sensitive privilege issues in this case. *Id.* at 406.

Having determined that the magistrate judge erroneously sanctioned Equitable, we now consider how to remedy that error. Clearly, as Equitable conceded at oral argument, we cannot give it total relief. Emerald has seen documents it never should have had. We cannot wipe Emerald's collective mind clean of the information it has acquired. Never-

---

[7]   See also *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) ("Only when the district court has been exposed to the contested documents and the specific facts which support a finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-client privilege in fact applies." (quoting *Holifield v. United States*, 909 F.2d 201, 204 (7th Cir. 1990))); *United States v. Tratner*, 511 F.2d 248, 252 (7th Cir. 1975) (" 'The responsibility of determining whether the privilege exists rests upon the District Judge and not upon the lawyer whose client claims the privilege.' Where this evidence may be presented only by revealing the very information sought to be protected by the privilege, an *in camera* inspection of the evidence may be appropriate." (quoting *NLRB v. Harvey*, 349 F.2d 900, 907 (4th Cir. 1965))).

theless, we can fashion partial relief for Equitable. Accordingly, we will reverse the sanction and remand the matter with the following instructions: first, deny Emerald's motion for discovery sanctions; second, order Emerald to return to Equitable all the documents that Emerald received as the result of the sanction, except for the five documents specifically found to be non-privileged; and, third, order Emerald to provide to Equitable all copies of the aforementioned documents that are in Emerald's possession, custody, or control. *Cf. In re Bridgestone/Firestone, Inc., ATX, ATX II*, 129 F. Supp. 2d 1207, 1219 (S.D. Ind. 2001) (remedy for inadvertent disclosure). Should Emerald wish to reacquire particular documents, Emerald may not do so within the confines of the now-closed original action. Rather, any such reacquisition will require additional discovery (non-sanction) proceedings with the documents being reviewed *in camera*. The new action would appear to be the most appropriate venue for any such proceedings.

## IV. Analysis of Emerald's Cross-Appeal

Briefly, we turn to Emerald's cross-appeal challenging the denial of its motion for expenses incurred as a result of the privilege log proceedings. At the closing of the original action, the district court terminated all pending motions, including the motion in question, apparently believing the motions to be moot. While that may have been true for the other motions, it was not true for this motion. That is because, even though subject matter jurisdiction was lacking, the district court still had the authority to adjudicate matters regarding sanctions. *See Willy*, 503 U.S. at 139; *Matos*, 101 F.3d at 1196. Therefore, to the extent that Emerald's motion sought additional sanctions against Equitable in the form of attorneys' fees and costs incurred during the log proceedings, the district court erred in denying the motion as moot.

Nonetheless, the district court reached the right result. As discussed above, Equitable did not engage in any sanctionable conduct during the log proceedings. Consequently, denial was the correct disposition of the motion, and we affirm that result. *See Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 887 (7th Cir. 2004) ("Despite its erroneous rationale, . . . the district court reached the correct result, and we affirm that result. 'The rule is settled that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason.' " (quoting *Payne v. Churchich*, 161 F.3d 1030, 1038 (7th Cir. 1998))).

## V. Conclusion

Sanctioning Equitable for having too many good-faith differences of opinion was fundamentally wrong. Moreover, the process for arriving at the sanction was arbitrary. Therefore, the global-disclosure sanction, which forced Equitable to disclose information protected by the attorney-client privilege, constituted an abuse of discretion. Accordingly, the sanction striking the privilege log is reversed and the documents (save for the five specifically found to be non-privileged) and copies thereof must be returned to Equitable. Separately, the district court reached the correct result in denying Emerald's motion for additional sanctions.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED WITH INSTRUCTIONS as stated above.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*