In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1901

TONI BALL,

*Plaintiff-Appellant*,

*v.*

CITY OF INDIANAPOLIS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-00179-SEB-DKL — **Sarah Evans Barker**, *Judge.*

ARGUED NOVEMBER 12, 2013 — DECIDED JULY 25, 2014

Before ROVNER and SYKES, *Circuit Judges*, and DURKIN, *District Judge.*[*]

ROVNER, *Circuit Judge*. Plaintiff Toni Ball sued Indianapolis police detective Clifton Jones and various state and municipal defendants after she was arrested in error based on a probable

---

[*]  The Honorable Thomas M. Durkin, of the Northern District of Illinois, sitting by designation.

cause affidavit that Jones prepared. The district court dismissed Ball's claims against the state defendants and granted judgment on the pleadings as to all of the municipal defendants, leaving only her Fourth Amendment claim against Jones. Ball then sought leave to amend her complaint to abandon the remaining federal claim and assert only state-law claims against Jones. The court granted the motion to amend and, at Ball's request, remanded the case to state court, where it had originated. Ball now appeals the district court's adverse rulings on her other claims. We affirm.

## I.

A warrant was issued for Ball's arrest in December 2010 based on an affidavit prepared and signed by Jones. Federal, state, and Indianapolis law enforcement officials had been investigating a suspected drug trafficking gang known as the Detroit Boys. Pursuant to that investigation, they had obtained authority to monitor telephone "call centers" that were used to field calls from the gang's customers and direct them to one of two drug distribution houses in Indianapolis, where customers could pick up the cocaine or heroin that they wished to purchase. According to the affidavit that Jones prepared, some thirteen of the intercepted calls either were placed by or made reference to an individual whose street name was "Mama Toni." Based in part on Jones' and another detective's familiarity with Ball's voice, Ball was believed to be the person making and/or referenced in these calls. The affidavit also averred that Ball had been seen at the gang's drug distribution houses. On these grounds, the affidavit asserted that Ball had conspired with gang members to possess cocaine and/or heroin.

Ball was arrested by Jones on December 16, 2010, and was charged with two counts of narcotics possession. She posted bond. But local prosecutors soon concluded that the wrong person had been arrested and charged. The State dismissed all charges against Ball on January 13, 2011.

Within a matter of weeks, Ball filed suit in the Marion County, Indiana superior court against the City of Indianapolis, its police department, the Indiana State Police, the State of Indiana, and Jones. The overall thrust of the complaint was that Jones had knowingly included falsehoods in the affidavit on which the warrant for Ball's arrest was based and that others involved in the investigation had failed to verify the accuracy of the affidavit. The complaint included, *inter alia*, federal claims under 42 U.S.C. §§ 1981 and 1983 against all defendants based on asserted violations of Ball's Fourteenth Amendment right to due process; claims under both the Fourth Amendment and Indiana law (including the Indiana constitution) against Jones for false arrest and imprisonment; a state-law claim for conspiracy to commit perjury against all defendants; state-law claims for fraud, perjury, and official misconduct against Jones; and respondeat superior claims against Indianapolis, the Indianapolis police department, the State, and the state police, premised on Jones' actions. Based on the federal claims, Jones and the municipal defendants (representing that they had the consent of the state defendants) removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. The municipal defendants answered the complaint and sought judgment on the pleadings as to the claims against them pursuant to Federal Rule of Civil Procedure 12(c); and the

state defendants moved to dismiss the claims against them pursuant to Rule 12(b)(6).

In response to the defense motions, the district court disposed of all but the Fourth Amendment claim for false arrest and imprisonment against Jones (as to which he had not sought judgment on the pleadings). R. 36; *see Ball v. City of Indianapolis*, No. 1:12-CV-00179-SEB, 2013 WL 1221936 (S.D. Ind. Mar. 25, 2013). Based on Ball's conceded failure to file the requisite notice under the Indiana Tort Claims Act, Ind. Code § 34-13-3-8, the court dismissed the state tort claims against Indianapolis and Jones in his official capacity; and the court found the allegations of the complaint insufficient to support such claims against Jones in his individual capacity. R. 36 at 5–6. The court found that the complaint likewise had failed to state a viable claim under state law against the state defendants. *Id.* at 6–8. Turning to the federal claims, the court noted that section 1983 was the sole avenue of relief against the City, but that Ball had failed to articulate any basis for imposing municipal liability for Jones' alleged errors under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978). R. 36 at 8–10. As for the state defendants, Ball conceded that they did not constitute "persons" who could be sued under section 1983; the claims against those defendants were therefore dismissed. R. 36 at 10–11. The court concluded its order noting that it would withhold final judgment until the remaining Fourth Amendment claim against Jones for false arrest and imprisonment was resolved. *Id.* at 11. The court set that claim for trial six months hence. R. 37.

Shortly thereafter, Ball filed two motions: a motion for leave to amend the complaint, and a motion to remand the case to state court. The motion for leave to amend proposed to pursue only a state-law claim against Jones for false arrest and imprisonment. R. 38. And given that Ball was no longer pursuing any federal claims, the second motion asked the court to relinquish its supplemental jurisdiction over the state-law claim and return the case to state court. R. 39.

The court granted both motions in a single order. The court observed:

> In sum, Plaintiff asks that we allow [her] to convert [her] sole remaining federal constitutional claim into a state law claim for false arrest and imprisonment, so that this cause can be remanded to state court and tried there. Defendant did not respond to either of Plaintiff's motions within the time permitted under our Local Rule, and Defendant's counsel has informed the Court's Courtroom Deputy that Defendant's lack of response was deliberate because Defendant takes no position on the matter.

R. 40 at 1. The court therefore directed the clerk to file Ball's amended complaint, ordered the cause remanded to state court (specifically, the Marion County Superior Court), and directed the district court clerk to mail a certified copy of the remand order to the state court clerk pursuant to 28 U.S.C. § 1447(c). R. 40 at 2.

Ball then timely filed her notice of appeal, seeking review of the court's prior decision disposing of most of her federal and state claims. R. 43.

## II.

As in any case, our first task is to consider whether we have jurisdiction over the appeal. *E.g.*, *Anderson v. Catholic Bishop of Chicago*, — F.3d —, 2014 WL 2959129, at *2 (7th Cir. July 2, 2014). Pursuant to 28 U.S.C. § 1291, we have jurisdiction to review a final decision of the district court. Ball's notice of appeal reflects her intent to appeal the district court's order on the motions to dismiss and for judgment on the pleadings, which she asserts became final once the court allowed the amendment of her complaint to pursue only a state-law claim against Jones and then remanded the case to state court. *See, e.g., Am. Nat'l Bank & Trust Co. of Chicago v. Equitable Life. Assur. Soc. of U.S.*, 406 F.3d 867, 876 (7th Cir. 2005) ("An appeal of a final decision 'brings up' for review all interlocutory decisions of the district court that were adverse to the appellant and that have not become moot.") (collecting cases).

The defendants contend that we lack appellate jurisdiction in view of 28 U.S.C. § 1447(d), which in relevant part provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise … ." As currently understood by the Supreme Court, however, this bar to review applies only to cases which were remanded pursuant to section 1447(c) because they were improperly removed to federal court in the first instance. *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 127, 116 S. Ct. 494, 497 (1995) ("[O]nly remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)."); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711–12, 116 S. Ct. 1712, 1718 (1996); *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336,

343–44, 96 S. Ct. 584, 589–90 (1976), *abrogated on other grounds by Quackenbush*, 517 U.S. at 714–15, 116 S. Ct. at 1720. The bar does not govern cases like this one, in which there is no dispute that the removal was proper under section 1446, and the remand resulted from the district court's later discretionary decision to relinquish its supplemental jurisdiction over Ball's remaining state-law claim pursuant to 28 U.S.C. § 1367(c) once the federal claims were disposed of. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–41, 129 S. Ct. 1862, 1866–67 (2009); *see also Massachusetts v. V&M Mgmt., Inc.*, 929 F.2d 830, 833 (1st Cir. 1991) (per curiam) (collecting cases).

More to the point, the defendants' argument confuses the question of whether the remand order may be reviewed with whether it constitutes a final order that permits an appeal under section 1291. *See id.* at 833–34 (addressing these questions separately). Ball does not ask us to review the merits of the remand order; after all, she asked the court to send the case back to state court and was therefore not aggrieved by the order. Instead, she is appealing the order because it is that order which terminated the litigation in federal court and as such is the final order that permits review of the orders that preceded it. *See Am. Nat'l*, *supra*, 406 F.3d at 876–77 (noting that district court's final order need not be adverse to appellant in order to permit appeal; rather, final order is means by which appellant is able to challenge prior interlocutory orders that were adverse to it).

The Supreme Court in *Thermtron* had held that "an order remanding a removed action does not represent a final judgment reviewable by appeal," 423 U.S. at 352–53, 96 S. Ct.

at 594; however, that aspect of *Thermtron* was abrogated by *Quackenbush*, 517 U.S. at 714–15, 116 S. Ct. at 1720. The Court in *Quackenbush* recognized that a remand order, like the stay order it had addressed in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S. Ct. 927 (1983), does not meet the traditional test of finality in the sense that it does not represent an end to the litigation between the parties, *Quackenbush*, 517 U.S. at 713, 715, 116 S. Ct. at 1719, 1720. Nonetheless, the Court deemed the remand order appealable because the effect of such an order is "'to surrender jurisdiction of a federal suit to a state court' and to disassociate [the district court] from the case entirely, retaining nothing of the matter on the federal court's docket," *id.* at 714, 116 S. Ct. at 1719 (quoting *Moses H. Cone* 460 U.S. at 11 n.11, 103 S. Ct. at 934 n.11). *See also Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 782 (7th Cir. 1999) ("A remand order terminates the litigation in federal court and therefore after *Quackenbush* is appealable as a 'final decision' under 28 U.S.C. § 1291—unless § 1447(d) forecloses appeal, which here it does not.").

Because the remand order constitutes a final order for purposes of section 1291, it also renders the court's prior, interlocutory orders ripe for review. *See City of Waco, Tex. v. U.S. Fid. & Guar. Co.*, 293 U.S. 140, 143, 55 S. Ct. 6, 7 (1934) (appeals court had jurisdiction to review dismissal order that "in logic and fact" preceded remand order, even if remand order itself was not subject to appellate review); *Good v. Voest-Alpine Indus., Inc.*, 398 F.3d 918, 922 (7th Cir. 2005) ("A number of courts, including this court, have relied on *Waco* as a basis for reviewing district court decisions that "in logic and in fact" preceded remand orders.") (citing *J. O. v. Alton Cmty. Unit Sch.*

*Dist. 11*, 909 F.2d 267, 269–71 (7th Cir. 1990)); *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1209 n.1 (10th Cir. 2000) ("Federal appeals courts have consistently held ... that they have jurisdiction to review a district court order dismissing federal claims on the merits where the district court subsequently exercised its discretion under § 1367 to remand supplemental state law claims to state court.") (collecting cases); *see also*, *e.g.*, *Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 628–29 (5th Cir. 2014) (remand order constituted final judgment permitting appeal of district court's contemporaneous orders granting summary judgment in favor of defendants on federal claim and dismissing certain state claims); *Porter v. Williams*, 436 F.3d 917, 920 (8th Cir. 2006) (remand order constituted final order that enabled review of district court's prior order granting partial summary judgment). Were it otherwise, any order preceding the remand, even if dispositive of a claim, would become insulated from review. *See Waco*, 293 U.S. at 143, 55 S. Ct. at 7; *Hyde Park Co.*, 226 F.3d at 1209 n.1.

To tie up one last point, Ball did not waive her right to appeal the adverse rulings as to her other federal and state claims when she did not reassert them in the amended complaint that the district court granted her leave to file. The district court's prior ruling disposed of those claims on the merits, and Ball was not required to re-plead them in her amended complaint in order to preserve her right to appellate review as to those claims. *See Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782–83 (7th Cir. 2013); *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 682–83 (7th Cir. 1990). By omitting her one surviving federal claim from the amended complaint, Ball effectively removed that claim from the case going forward,

*see, e.g.*, *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012), and laid the groundwork for returning the case to state court, *see* § 1367(c); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S. Ct. 614 (1988). But that decision did not forfeit her right to appeal as to the claims the court had already dealt with definitively. As we have said, once the district court remanded the remaining state-law claim to state court and thereby terminated the litigation in federal court, the court's prior ruling granting the defense motions became subject to appellate review. Satisfied that we have jurisdiction over the appeal, we now turn to the merits.

We review *de novo* the district court's decisions to dismiss certain of Ball's claims pursuant to Rule 12(b)(6) and to enter judgment on the pleadings as to others pursuant to Rule 12(c). *E.g.*, *Olson v. Wexford Clearing Servs. Corp.*, 397 F.3d 488, 490 (7th Cir. 2005). Both decisions implement the same standard, *see Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014), which requires that the complaint "state a claim that is plausible on its face," *id.* at 728 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).

Beginning with Ball's federal claims, we turn first to the section 1983 claim against the City and its police department (which we discuss as a claim against the City, as Bell conceded below that the police department is not a separate entity that may be sued in its own right, *see* R. 36 at 3 n.2). The obvious problem with this claim, as noted by the district court, is that it identified no basis for holding the City liable beyond the fact that its employee, Jones, prepared the affidavit that resulted in Ball's wrongful arrest. There is no *respondeat superior* liability

under section 1983, however; the violation of the plaintiff's rights must result from a municipal custom or policy in order for the municipality to be held liable. *Monell v. Dep't of Social Servs.*, *supra*, 436 U.S. at 694, 98 S. Ct. at 2037–38. Ball's complaint identifies no such custom or policy pursuant to which Jones was acting when he drafted and signed the affidavit implicating Ball. Instead, Ball contends that Jones, because he had the power to decide what information was included in the affidavit, was the City's final decisionmaker as to the content of the affidavit, and as such his actions in and of themselves constituted municipal policy sufficient to render the City liable. *See, e.g.*, *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013) (citing *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir.2009)); *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780–81 (7th Cir. 2011). But simply because a municipal employee has decisionmaking authority, even unreviewed authority, with respect to a particular matter does not render him a policymaker as to that matter. *Kristofek*, 712 F.3d at 987; *Milestone*, 665 F.3d at 780. A municipality must have delegated authority to the individual to make policy on its behalf. *Valentino*, 575 F.3d at 676. And Ball supplies us with no reason to believe that Jones could have possessed such authority simply because he had the power, like other detectives, to draft and sign a probable cause affidavit.

Ball also sued the municipal and state defendants under section 1981. Ball concedes that the Supreme Court in *Jett v. Dallas Independent School District*, 491 U.S. 701, 735, 109 S. Ct. 2702, 2723 (1989), deemed section 1983 to be the sole avenue of relief for violation of the rights protected by section 1981 when the claim is asserted against a state (*i.e.*, government) actor, but

suggests that the Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1071, may have superseded *Jett* on this point. We recently rejected that very argument in *Campbell v. Forest Preserve Dist. of Cook Cnty., Ill.*, 752 F.3d 665, 671 (7th Cir. 2014); *see also Goldberg v. 401 N. Wabash Venture LLC*, — F.3d —, 2014 WL 2579939, at *9 (7th Cir. June 10, 2014). The section 1981 claim was properly dismissed.

Ball also seeks to hold the state defendants (Indiana and its state police) liable under section 1983. Ball concedes that the State and its employees acting in their official capacities do not constitute "persons" who may be sued pursuant to section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 109 S. Ct. 2304 (1989). She postulates instead that discovery might reveal officers of the state police against whom (in their individual capacities) a section 1983 claim could be made. But as the district court noted, Ball's complaint names only the State and its agency as defendants; it does not preserve a claim against any as-yet unidentified individual officer by citing one or more unknown persons as defendants.

We proceed to the claims under state law, beginning with Ball's claims against the City for false arrest and imprisonment, fraud, perjury, conspiracy to commit perjury, and official misconduct. The district court reasoned that because these claims sounded in tort, they were subject to the Indiana Tort Claims Act, including that Act's requirement that a plaintiff timely file notice of her claim against a political subdivision —here, the City—within 180 days of her injury, *see* Indiana Code § 34-13-3-8; and because Ball did not give notice to the City within that period, it dismissed these claims. R. 36 at 4–5.

*See Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 649 (7th Cir. 2006) (noting, *inter alia*, that whether plaintiff has complied with notice requirement is a question of law for court to resolve), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967–68 & n.1 (7th Cir. 2013).

Ball's sole contention with respect to these claims is that the district court wrongly assumed that these were tort claims, without citing any authority to support that label. She appears to reason that these claims, when founded on action that can only be taken by a public official (including, for example, preparing a probable cause affidavit in support of an arrest warrant), should not be regarded as torts subject to the notice requirement of the ITCA as she concedes that they would be if based on the sort of actions that a private citizen could commit. Ball Br. 14–15. We note that Ball herself cites no authority in support of her argument. In any case, we are satisfied that the district court did not err in categorizing these claims as tort claims. As the Supreme Court has explained:

> A "tort" has been defined broadly as a "civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages." See W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts 2 (1984). Remedial principles thus figure prominently in the definition and conceptualization of torts. See R. Heuston, Salmond on the Law of Torts 9 (12th ed. 1957) (noting that "an action for damages" is "an essential characteristic of every true tort," and that, even where other relief, such as an injunction, may be available, "in all such cases it is solely by virtue of

> the right to damages that the wrong complained of
> is to be classed as a tort"). Indeed, one of the hall-
> marks of traditional tort liability is the availability of
> a broad range of damages to compensate the plain-
> tiff "fairly for injuries caused by the violation of his
> legal rights." *Carey v. Piphus*, 435 U.S. 247, 257, 98 S.
> Ct. 1042, 1049 (1978). …

*United States v. Burke*, 504 U.S. 229, 234–35, 112 S. Ct. 1867, 1870–71 (1992). To put it simply, Ball is seeking relief in the form of damages in compensation for civil wrongs. She has given us no reason to quarrel with the district court's decision to treat these as tort claims.

The claims against Jones in his individual capacity face a different obstacle. The district court thought that the complaint did not set forth sufficient facts to comply with Indiana Code § 34-13-3-5(c) (which requires that certain allegations be made in support of a claim against an employee personally, along with "a reasonable factual basis supporting the allegations) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). R. 36 at 6. We are less concerned with the adequacy of Ball's factual allegations—which we may assume *arguendo* might suffice to comply with Federal Rule of Civil Procedure 8(a), *see, e.g.*, *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 671–72 (7th Cir. 2008) (federal notice pleading standard rather than conflicting state law standard governs sufficiency of complaint); *Farzana K. v. Ind. Dep't of Educ.*, 473 F.3d 703, 705 (7th Cir. 2007)—than with the

question of whether Jones is amenable to suit at all on these claims. Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment. *See* Ind. Code § 34-13-3-5(b); *Julian v. Hanna*, 732 F.3d 842, 848–49 (7th Cir. 2013). As the district court pointed out, the complaint repeatedly alleges that Jones was acting pursuant to his position as a detective with the Indiana police department. R. 36 at 6. In this court, Jones' claim of immunity under the Indiana Tort Claims Act (Defendants' Br. 21) has gone unanswered. On this basis, we find that the state tort claims against Jones were properly dismissed.

This brings us to the state law claims that Ball asserted against Indiana and the Indiana State Police. As the district court observed, the complaint is "markedly sparse" in setting forth a basis for these claims: it alleges only that the drug enforcement section of the state police played some role in the telephone intercepts that led to the misidentification of Ball as a suspect, and that its officers, like the other defendants who participated in the investigation, neglected to verify the accuracy of the information contained in Jones' affidavit. R. 36 at 6–7 (citing ¶¶ 68–74 of the complaint). Ball again invokes Rule 8(a). But even if notice pleading might excuse the lack of factual detail in Ball's complaint, there remains the question of whether Ball has a viable claim against the state defendants. Her briefs do not convince us that she does.

To the extent these claims are founded on the Indiana constitution, Indiana has yet to recognize a civil remedy for such violations, as the district court pointed out. R. 36 at 7 (citing *NAACP v. Ballard*, 741 F. Supp. 2d 925, 934 (S. D. Ind. 2010) (collecting cases)). Ball's sole response is to point out that

the district court relied on its own precedent for this point and to note that "there appears to be no clear answer as to whether Indiana recognizes monetary damages" for violations of its constitution. Ball Br. 16 (citing *Cantrell v. Morris*, 849 N.E.2d 488 (Ind. 2006) (leaving that question open)). Our responsibility, of course, is to apply Indiana law and, where there are gaps in the pertinent case law, predict how the Indiana Supreme Court would rule. *See, e.g.*, *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 683 (7th Cir. 2007). But beyond noting the uncertainty in Indiana law, Ball has devoted no more than three sentences to her argument, and has cited no authority to support the notion that the Indiana Supreme Court either has recognized, or likely would recognize, a civil remedy for state constitutional violations. In this regard, she has not complied with her obligations under Federal Rule of Appellate Procedure 28(a)(8)(A), and has waived any contention that the district court erred with respect to her state constitutional claims. *See, e.g.*, *Fluker v. Cnty. of Kankakee*, 741 F.3d 787, 795 (7th Cir. 2013); *Trentadue v. Redmon*, 619 F.3d 648, 654 (7th Cir. 2010).

Finally, Ball has also suggested that she might have a statutory claim against the state defendants founded on the Indiana criminal code. The district court discounted this possibility, reasoning that the State cannot commit a crime against itself, *see State v. Ziliak*, 464 N.E.2d 929, 930 (Ind. Ct. App. 1984) ("Because a crime is an offense against the sovereign, it is axiomatic that the sovereign cannot commit a crime."), and that Ball, in any event, lacks standing to pursue such a claim, *see* Ind. Code § 35-34-1-1(a) ("All prosecutions of crimes shall be brought in the name of the state of Indiana."). R. 36 at 7. Ball complains that this leaves the victims of criminal

acts committed by state officials without a remedy, but her cursory analysis fails to consider the range of available tort remedies, as well as relief under section 1983, that may address the wrongs committed by state actors.

We end with this qualifying note. The district court aptly noted that Ball's original complaint had a "kitchen sink" quality to it. R. 36 at 3. For their part, the defendants have responded to the complaint in kind, asserting a mind-numbing array of grounds on which Ball's various claims purportedly fail. We have taken a conservative approach to this appeal, confining our analysis to the particular claims and arguments that Ball has pursued in her appellate briefs. If we have not addressed a particular claim against a particular defendant or set of defendants, it is because Ball has not sufficiently set forth an argument in support of that claim. Likewise, if we have not addressed a particular argument that the defendants have made, it is because we do not believe it is necessary to reach that argument in order to sustain the district court's judgment.

## III.

Because the allegations of the complaint did not support Ball's claims for relief, apart from the Fourth Amendment false arrest and imprisonment claim that she later dropped, the district court properly dismissed and granted judgment on the pleadings as to those claims. The parties shall bear their own costs of appeal.

AFFIRMED.