In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-2345

DAVID KRISTOFEK,

*Plaintiff-Appellant,*

*v.*

VILLAGE OF ORLAND HILLS,
a municipal corporation, and
THOMAS SCULLY, individually
and in his official capacity,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:11-cv-07455—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED JANUARY 9, 2013—DECIDED MARCH 11, 2013

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* In November 2010, Plaintiff David Kristofek, a part-time officer for the Village of Orland Hills Police Department, arrested a driver for traffic violations, but the driver turned out to be the son of a former mayor of a nearby town. Because of the

driver's political connections, Kristofek was ordered to let him go. Kristofek strongly disagreed with what he believed was political corruption and expressed such concerns to his fellow officers, his supervisors, and eventually the FBI. When Police Chief Thomas Scully found out about this conduct, he fired him.

Kristofek sued, bringing First Amendment retaliation claims against Scully and the Village of Orland Hills pursuant to 42 U.S.C. § 1983. The district court granted the defendants' motions to dismiss, finding that Kristofek's speech did not involve a matter of public concern, principally because his sole motive was to protect himself from civil and criminal liability. The defendants-appellees rely solely on this reasoning as a basis for affirming on appeal. But the complaint does not allege that Kristofek's *only* motive was self-interested, and the mere existence of a self-interested motive does not preclude the plausibility of mixed motives, which is consistent with protected speech. We also find that Kristofek has plausibly pled, albeit barely, that Scully had at least *de facto* authority to set policy for hiring and firing, sufficient to sustain a *Monell* claim against the Village of Orland Hills. For these reasons, we reverse and remand.

## I.  BACKGROUND

Because this case is considered on a motion to dismiss for failure to state a claim, we assume the facts alleged in the complaint to be true. Plaintiff David Kristofek was a part-time police officer for the Village of Orland Hills.

On November 12, 2010, while on routine patrol, Kristofek ran the license plate of an automobile and discovered that the registration was suspended. (The complaint does not say why he ran the plate, and it does not matter.) He pulled the vehicle over and asked the driver to produce proof of valid insurance, but the driver was unable to do so. Kristofek wrote two traffic tickets for the suspended registration and the absence of proof of insurance, and pursuant to police department policy, arrested the driver and had the vehicle towed. Additional officers arrived on the scene to help Kristofek take the driver to the police station.

During the arrest, the driver told the officers that his mother was a former mayor of a nearby town and asked to be released. The driver's girlfriend, who was a passenger in the vehicle, gave Kristofek a cell phone and said that the driver's mother was on the phone. The driver's mother asked Kristofek not to arrest her son, but Kristofek explained that under police department policy concerning certain traffic violations, he had no choice.

After taking the driver to the police station, Kristofek began filling out the arrest paperwork and entering the driver's booking information into the computer system. Other officers suddenly came in and told Kristofek to stop what he was doing, give all the paperwork to the deputy chief, and delete any information about the driver from the computer system. Kristofek believed he had done nothing wrong, so he personally confronted the deputy chief, who responded,

"Did you not understand what you were [expletive] told?" Kristofek relented, gave the documents to the deputy chief, and released the driver.

A couple of days later, Kristofek ran into the deputy chief, who told him that Kristofek had made a "good arrest" but that the driver's release from custody was "above you and I." Kristofek said he disagreed with the decision to release the driver simply because his mother was politically connected. Kristofek expressed concern "that the unequal application of the law due to political considerations was improper and possibl[y] illegal." (The complaint is actually ambiguous as to whether he expressed this concern to the deputy chief or kept it to himself; we assume that he expressed it.)

Several months later, in April 2011, Kristofek participated in an online police training seminar, which posed a hypothetical that was coincidentally similar to what happened in November 2010. In the hypothetical, an officer makes a valid arrest and booking, but the supervisor takes the paperwork and orders the release of the arrestee, so that the arrestee may "evade prosecution." The training simulation said that in this situation, the supervisor has committed a crime, because "in a case with similar facts, an Illinois appellate court ruled that a police officer is a public employee under the 'official misconduct' statute and can be prosecuted for a violation."

After this training, Kristofek's concerns about the incident "escalated because of the possible criminal and civil liability." He then spoke to the other officers

who had assisted in the arrest, expressing his concerns that he and the other officers were potentially involved with political corruption and that they may have committed a crime. He then consulted an attorney, and pursuant to the attorney's advice, Kristofek told the FBI about the arrest and about "possible political corruption in the Orland Hills Police Department and/or Village of Orland Hills," and said that he was not sure if the order to release the driver came from the police department or the mayor's office. The FBI agent said that there would be an investigation. Kristofek then went back to the other officers and told them that he had contacted the FBI out of his concern that he and the other officers could be accused of committing a crime.

On April 21, 2011, Kristofek was ordered to report to Police Chief Thomas Scully. Scully "angrily" said that he had heard that Kristofek was speaking to other officers about "possible corruption and illegal activity" concerning the release of the driver. Kristofek told Scully that he was concerned about exposing himself and the police department to liability and "wanted no part of it," and he revealed that he had reported the incident to "an outside law enforcement agency" to protect himself. Scully said that he needed to be able to trust his police officers and that he no longer trusted him "for speaking to other persons about the circumstances of the arrest of the driver." Scully then told Kristofek that he had two options: resign or have his employment terminated, and that if Kristofek could not decide, Scully would decide for him. Kristofek said he had done nothing wrong, and so he would not resign. Scully

then terminated his employment, and Kristofek was immediately escorted out of the building in front of his co-workers. Two of the other officers who participated in the arrest have since left the police department.

Kristofek subsequently sued Scully and the Village of Orland Hills (collectively, "Orland Hills"), claiming pursuant to section 1983 that his First Amendment rights were violated when he was fired in retaliation for his statements to the other officers and the FBI about "possible political corruption, political favoritism, and criminal activity," made in his capacity as a citizen "contesting the unequal application of the laws to its citizens." He also brought several state law claims, including under the Illinois Whistleblower Act. The defendants moved to dismiss, and the district court granted their motions, finding that Kristofek's speech was not protected under the First Amendment because it did not involve matters of public concern. In so finding, the court emphasized that, according to the complaint itself, Kristofek's sole motive in spreading the word about political corruption was to protect himself from civil and criminal liability. The court then declined to exercise supplemental jurisdiction over the state law claims. Kristofek appealed.

## II. ANALYSIS

In concluding below that Kristofek has stated viable First Amendment claims against Orland Hills, we emphasize that we are construing Kristofek's complaint liberally, assuming all of his factual allegations to be

true, and drawing all reasonable inferences in his favor, as we must at this early stage. Nothing in this opinion should be read to prejudge whether the evidence will show that Kristofek's claims about Orland Hills's practices are meritorious.

### A. Kristofek's Speech, Notwithstanding His Motives, Was a Matter of Public Concern

Kristofek claims that he was fired in retaliation for his speech concerning the wrongfulness of the police department's release of the driver due to the driver's political connections. A viable First Amendment retaliation claim by a public employee requires, at a minimum, that the speech being retaliated against be constitutionally protected, which means that the speech must involve a matter of "public concern." *See Chaklos v. Stevens*, 560 F.3d 705, 712 (7th Cir. 2009).[1] "Whether a statement rises

---

[1] The plaintiff must also show that he was speaking in his capacity as a private citizen rather than as an employee. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Orland Hills does not argue on appeal that Kristofek did not speak in a private citizen capacity. Nor does Orland Hills suggest that the speech at issue was not pled as a "substantial or motivating factor in the retaliatory action." *Chaklos*, 560 F.3d at 711. And Orland Hills does not suggest that it is appropriate at the motion to dismiss stage to consider whether, even assuming the speech involves a public concern, the government can prove that " 'the interest of the employee as a citizen in com-

(continued...)

to the level of public concern is a question of law, and in answering this question we look to the 'content, form, and context' of the statement." *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 147-48, 148 n.7 (1983)). The motive of the speaker is relevant as part of the "context" in which the speech was made, *id.* at 714, but content "remains the most important factor in determining whether speech addresses a matter of public concern." *Id.*

Orland Hills focuses exclusively on Kristofek's motive, arguing that his speech did not involve a matter of public concern because it was motivated entirely by his self-interested desire to protect himself from civil and criminal liability. The district court also dismissed the claims largely on this basis. The complaint indeed repeatedly references Kristofek's desire to protect himself from liability, and the catalyst for most, if not all, of the speech for which he was fired was the April 2011 online training seminar which (understandably) sparked Kristofek's fear for his own liability. Even his whistleblowing to the FBI was made pursuant to his lawyer's advice, which he sought for the purpose of protecting himself from liability.

However, a public employee's speech may still be protected if the speaker's motives were mixed and

---

[1] (...continued)
menting on the matter is outweighed by the interest of the government employer in promoting effective and efficient public service.' " *Id.* at 714 (citation omitted). So we do not address any of these considerations.

also included a desire to help the public, *see Chaklos*, 560 F.3d at 714; *Greer v. Amesqua*, 212 F.3d 358, 371 (7th Cir. 2000) ("'[A] personal aspect contained within the motive of the speaker does not necessarily remove the speech from the scope of public concern.'" (citation omitted)), and at no point does the complaint allege that Kristofek's *only* motive was to protect himself. The mere fact that Kristofek was motivated by his self-interest does not make it implausible that he was *also* motivated to help the public. Any reasonable person would understand that a report to the FBI could potentially result in widespread changes to police practices in Orland Hills. Kristofek's early response to the incident in November 2010 to the deputy chief, "that the unequal application of the law due to political considerations was improper and possibl[y] illegal," hints at a latent concern beyond that of his own liability. Kristofek's rather aggressive reaction (e.g., going to the FBI instead of first discussing his concerns about his liability to Scully) to an incident that inherently contains a public interest component also tends to suggest that Kristofek was not solely concerned with his own liability. Because it is plausible that Kristofek's motives were mixed, Orland Hills's sole argument on appeal fails. We may reverse on this basis alone.

But even if Kristofek were motivated *exclusively* by his own self-interest, his First Amendment claim would not necessarily be dismissed. As we have stated before, motive alone does not conclusively determine whether a public employee's speech involves a matter of public concern. *See, e.g.*, *Gustafson v. Jones*, 290 F.3d 895, 908

(7th Cir. 2002) ("As a legal matter, while motive is relevant to the 'matter of public concern' inquiry, we have consistently held that it is not dispositive." (citing cases)); *Chaklos*, 560 F.3d at 714 (motive is not "an absolute litmus test [to] supplant content in terms of overall importance to the public concern inquiry" (quoting *Cliff v. Bd. of Sch. Comm'rs of City of Indianapolis, Ind.*, 42 F.3d 403, 410 (7th Cir. 1994))). The marketplace of ideas would become quite impoverished indeed if anyone (including public employees) motivated solely by his or her own self-interest were precluded from participating in it. Making the speaker's motive dispositive would not only run afoul of common sense and our well-established case law, it would also run afoul of *Connick*'s requirement that we look to content and form in addition to context (of which motive is a part). *See, e.g.*, *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 706 (7th Cir. 2010). However, while not dispositive, motive remains relevant. *See Gustafson*, 290 F.3d at 908. And though content is recognized as the most important factor, neither is it dispositive for that conclusion would eliminate form and context from the three-factor *Connick* test.

The root of the confusion may lie in a phrase, cited by both parties, that we have repeated with some frequency: that "speech of public importance is only transformed into a matter of private concern when it is motivated *solely* by the speaker's personal interests." *Gazarkiewicz v. Town of Kingsford Heights, Ind.*, 359 F.3d 933, 941-42 (7th Cir. 2004); *see also Gschwind v. Heiden*, 692 F.3d 844, 846 (7th Cir. 2012) (repeating quote); *Chaklos*,

560 F.3d at 714 (same); *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 672 (7th Cir. 2009) (same); *Milwaukee Deputy Sheriffs' Ass'n v. Clarke*, 574 F.3d 370, 380 (7th Cir. 2009) (same). However, this phrase does not refer exclusively to the unseen, secret "motive" of the speaker, which goes only to the context of the speech. It instead essentially summarizes the "public concern" test established by *Connick v. Myers*, 461 U.S. 138 (1983), which looks to the overall *objective* or *point* of the speech, as ascertained by *all three* factors of content, form, and context. As we have said in an oft-quoted passage: "The [*Connick*] test requires us to look at the *point* of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?" *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir. 1985); *see also Delgado v. Jones*, 282 F.3d 511, 518 (7th Cir. 2002) (drawing from this formulation); *Kokkinis v. Ivkovich*, 185 F.3d 840, 844 (7th Cir. 1999) (same); *Cliff*, 42 F.3d at 410 (same). Note that these questions appropriately focus on the objective of the speech itself, rather than fixating solely upon the speaker's inner motives (though the line is admittedly not always clear). *See also Sousa v. Roque*, 578 F.3d 164, 173-75 (2d Cir. 2009) (resolving similar apparent tension in its own case law concerning motive). For instance, in *Connick*, the Supreme Court noted that the speaker's motives were self-interested, but in the same breath also looked to the content of her speech in determining that the speech's objective was to further a personalized

grievance. *See Connick*, 461 U.S. at 148 ("Nor did Myers seek to bring to light actual or potential wrongdoing . . . . [T]he focus of Myers' questions is not to evaluate the performance of the office but rather to gather ammunition for another round of controversy with her supervisors.").

It is not a stretch to distinguish between the secret intent of the *speaker* and the objective of the *speech*. A whistleblower's exclusive motive may be a desire for fame and a book deal, but it is also accurate to say that the main objective of his *speech*—given its content, context, and the manner in which it is delivered—is to reform the system. *See, e.g.*, *Connick*, 461 U.S. at 149 (notwithstanding the speaker's exclusively self-interested motive, another part of her speech did involve a matter of public concern due to its content). To further illustrate by rough analogy, when interpreting the unambiguous terms of a contract, we often refer to giving "effect to the intent of the parties," but that does not necessarily mean we are trying to divine the actual, secret motivations of each party. *See, e.g.*, *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009) ("Our primary objective in construing a contract is to give effect to the intent of the parties . . . [, but] the court looks first to the written agreement and not to the parties' subjective understandings. The status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves." (citations and quotation marks omitted)).

In sum, if the objective of the speech—as determined by content, form, and context—is simply to further a

purely personalized grievance, then the speech does not involve a matter of public concern. *See, e.g.*, *Bivens v. Trent*, 591 F.3d 555, 561-62 (7th Cir. 2010) ("The *context* and the *form* of Bivens's grievance are consistent with the vindication of a personal interest, rather than a public concern, and the *content* of the grievance—while touching a subject of potential interest to the public—does not convince us that his purpose was anything other than personal." (emphasis added)); *cf. Gustafson*, 290 F.3d at 908 ("Motive matters to the extent that even speech on a subject that would otherwise be of interest to the public will not be protected if the expression addresses only the personal effect upon the employee or if the only point of the speech was to further some purely private interest." (citations and quotation marks omitted)). But if an objective of the speech was also to bring about change with public ramifications extending beyond the personal, then the speech does involve a matter of public concern.

We pause to stress that nothing in the above discussion should be construed as establishing new law, for we are simply reaffirming the already well-established *Connick* rule that whether speech is a matter of public concern depends on content, form, and context; and thus the speaker's motive, which is a part of context, obviously cannot be dispositive. *See, e.g.*, *Sousa v. Roque*, 578 F.3d 164, 173-74 (2d Cir. 2009) ("To the extent that our precedents have been less than clear, we reaffirm today . . . : a speaker's motive is not dispositive in determining whether his or her speech addresses a matter of public concern. . . . Whether or not speech addresses a

matter of public concern 'must be determined by the content, form, and context of a given statement, as revealed by the whole record,' and while motive surely may be one factor in making this determination, it is not, standing alone, dispositive or conclusive." (quoting *Connick*, 461 U.S. at 147-48)). We repeat these principles because both Orland Hills and the district court seemed to believe that motive was dispositive, and even Kristofek's counsel at oral argument was all too ready to concede that motive alone could determine whether Kristofek's speech was protected. It would be inefficient to allow discovery, and potentially summary judgment motion practice and trial, to proceed on such a fundamentally erroneous premise, potentially resulting in a second appeal and remand.

## B.  The Complaint Has Plausibly Established Scully as Having Authority to Set Policy for Hiring and Firing, Sufficient to State a *Monell* Claim

We next address whether Kristofek has plausibly stated a claim against the Village of Orland Hills as a municipal body, pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). One way in which a municipality may be liable for a section 1983 violation is if "an individual with final policymaking authority for the municipality (on the subject in question) caused the constitutional deprivation." *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009). "It is well-established that when a particular course of action is directed by those who set

municipal policy, the municipality is responsible under section 1983, even if the action in question is undertaken only once." *Id.* at 675. "But just because [the individual] is the *decisionmaker* on hiring/firing decisions for the Village government does not necessarily make him the *policymaker* on those issues." *Id.* "[T]he mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority. There must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire." *Id.* at 676 (quotation marks and citation omitted).

We find that Kristofek has stated, albeit barely, a plausible claim that Scully had at least *de facto* authority to set policy for hiring and firing. The complaint suggests Scully was fully in charge of the police department and that his firing decisions were not reviewed. *See, e.g.*, *Valentino*, 575 F.3d at 677 ("Key in our reasoning was that the plaintiff provided evidence that: (1) the board did not review the Chief's personnel decisions; and (2) the Chief was completely in charge of the probation department.") (citing *Kujawski v. Bd. of Comm'rs of Bartholomew Cty., Ind.*, 183 F.3d 734, 740 (7th Cir. 1999))). The picture painted by the complaint, which includes Scully's angry reaction to Kristofek's speech, "suggests that [Scully] had the unfettered discretion to hire and fire whomever he pleased." *Id.* at 678; *see also Gschwind*, 692 F.3d at 848 (school board permitted principals to "make evaluation and employment decisions as they see fit," making the principal a final policymaker). And it is plausible that Scully essentially had a *de facto* policy that anyone

who made noise about political corruption or favoritism would be fired, especially when he equated "speaking to other persons about the circumstances of the arrest of the driver" as a breach of trust against Scully, and then suggested that he could not work with anyone whom he could not trust. By firing Kristofek and escorting him out of the building in front of his co-workers, many of whom were well aware of Kristofek's speech, Scully made it clear to his staff that anyone else who complained about the November 2010 incident (or any other incident involving political favoritism) would meet a similar fate. Two other officers involved in the incident have left the force since that time. Though discovery may reveal that they left for reasons having nothing to do with the November 2010 incident, it may be inferred at the pleading stage that their leaving was due to Scully's established policy.

At oral argument, Orland Hills suggested that the Village Board never formally delegated to Scully the authority to set policy in regards to hiring and firing, rather only to make final hiring and firing decisions. But even if it were appropriate to consider this fact outside the pleadings on a motion to dismiss, that fact alone does not necessarily preclude, or render implausible, the fact that Scully essentially had *de facto* authority to set hiring and firing policy "without as much as a whisper" from the Village Board. *Valentino*, 575 F.3d at 677. Kristofek has thus adequately stated a claim against the Village at this early stage. Orland Hills will, of course, have an opportunity to show through evidence that it has not violated Kristofek's constitutional rights.

### III. CONCLUSION

For the above-stated reasons, we REVERSE the district court's dismissal of the complaint and REMAND for further proceedings consistent with this opinion.