David **KRISTOFEK**, Plaintiff,

v.

**VILLAGE OF ORLAND HILLS,**
et al., Defendants.

No. 11 C 7455

United States District Court,
N.D. Illinois, Eastern Division.

Signed August 7, 2014

Jerome F. Marconi, Jr., Jerome F. Marconi & Associates, Chicago, IL, Keith A. Karlson, Reimer & Karlson LLC, Hinsdale, IL, for Plaintiff.

K. Austin Zimmer, Eric T. Stach, Veronica Bonilla–Lopez, Del Galdo Law Group, LLC, Berwyn, IL, John B. Murphey, Rosenthal, Murphey, Coblentz & Donahue, Patrick John Ruberry, Litchfield and Cavo, LLP, James J. Roche, Kelly Kathleen Kachmarik, James J. Roche and Associates, Chicago, IL, for Defendants.

## *MEMORANDUM OPINION*

SAMUEL DER–YEGHIAYAN, District Judge

This matter is before the court on Plaintiff David Kristofek's (Kristofek) motion for partial summary judgment. This matter is also before the court on Defendant Village of Orland Hills' (Village) motion for summary judgment and Defendant Thomas Scully's (Scully) motion for summary judgment. For the reasons stated below, the Village's motion for summary judgment and Scully's motion for summary judgment are granted, and Kristofek's motion for partial summary judgment is denied.

## BACKGROUND

Kristofek was hired in September 2010 as a part-time police officer by the Village. In November 2010, while Kristofek was still working in his probationary period, Kristofek executed a routine traffic stop on a vehicle (Vehicle). Kristofek decided to issue the driver of the Vehicle (Driver), who is an African–American, tickets (Tickets) for driving with a suspended license plate registration and for failing to provide proof of insurance. In addition, Kristofek

chose to arrest the Driver (Arrest). The mother of the Driver, upon learning of the Arrest, made a complaint about the Arrest to a township trustee (Trustee) who she knew, accusing Kristofek of engaging in racial profiling. The complaint was passed on to the Mayor of the Village (Mayor) who then passed the complaint onto Scully, the Police Chief of the Village. Scully then contacted the Trustee directly to inquire as to the complaint and allegations of racial profiling. Scully then called Deputy Chief Blaha (Blaha) at the police station and told him to void the Arrest and Tickets. Scully also, in accordance with established procedures sent a letter (Letter) to the Clerk of Court identifying the Tickets and advising the Clerk of Court that the Tickets had been voided. The mother of the Driver eventually filed a formal complaint against Kristofek at the Village Police Department relating to the incident and the allegations of racial profiling of her son.

Five months after the above incident, on or about April 1, 2011, Kristofek participated in an online police seminar (Seminar) at which time he learned that he could be personally liable for certain conduct. At no time did Kristofek make complaints relating to any concerns as to corruption to his superiors or to any Village officials or state agencies which were available to him. Instead, Kristofek after the Seminar, concerned for his own liability contacted the Federal Bureau of Investigation (FBI) to alert the FBI of what he believed was "possible political corruption." (A Compl. Par. 30). There is no evidence that any prosecution by federal authorities was ever initiated against any of Defendants relating to this matter. Defendants contend that the Arrest and Tickets were voided to protect the Village and Kristofek from a potential lawsuit relating to the allegations of racial profiling by Kristofek. Defendants contend that Kristofek was ul-timately terminated during his probationary period for various performance-related reasons such as making baseless accusations of corruption, failing to properly search a prisoner who was carrying a firearm, and failing to properly handle a traffic stop without complaint. Kristofek contends that his termination was retaliation based on the exercise of his First Amendment rights.

Kristofek includes in his amended complaint claims brought under the Illinois Whistleblower Act, 740 ILCS 174/20 (Counts I–III), a state law retaliatory discharge claim (Count IV), a claim alleging a violation of his First Amendment rights brought pursuant to 42 U.S.C. § 1983 (Section 1983) (Count V), and a free speech claim based on an alleged violation of the Illinois Constitution (Count VI). Kristofek now moves for summary judgment as to liability and causation on the claims brought in Counts I through V and on the issue of qualified immunity. The Village moves for summary judgment on all claims, and Scully moves for summary judgment on the claim in Count V brought against him, which is the sole claim brought against Scully.

## LEGAL STANDARD

■ Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School,* 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of

material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe all inferences in favor of the party against whom the motion under consideration is made." *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir. 2007)(internal quotations omitted); *see also Krieg v. Seybold*, 481 F.3d 512, 516 (7th Cir. 2007).

## DISCUSSION

### I. First Amendment Retaliation Claim (Count V)

█ Defendants move for summary judgment on the first amendment retaliation claim. A public employee bringing a First Amendment retaliation claim must establish: (1) that "his speech was constitutionally protected," (2) that "he has suffered a deprivation likely to deter speech," and (3) that "his speech was at least a motivating factor in the employer's action." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013); *Volkman v. Ryker*, 736 F.3d 1084, 1091 (7th Cir. 2013)(stating three steps for establishing a First Amendment retaliation claim brought by a public employee); *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012)(listing elements for first amendment retaliation claim bought by a public employee and explaining that a "plaintiff need only show that a violation of

his First Amendment rights was a motivating factor of the harm he's complaining of; once he shows that the burden shifts to the defendant to show that the harm would have occurred anyway"); *Zellner v. Herrick*, 639 F.3d 371, 378–79 (7th Cir. 2011)(stating that "[i]n other words, the plaintiff bears the burden of proving 'but for' causation"); *see also Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011)(stating that a public employee must show: (1) that "his speech was constitutionally protected," (2) that "the protected speech was a but-for cause of the employer's action," and (3) that "he suffered a deprivation because of the employer's action"); *Hutchins v. Clarke*, 661 F.3d 947, 955–56 (7th Cir. 2011)(stating that "[f]irst, the court must determine whether the employee's speech was constitutionally protected under the *Connick–Pickering* test[,] ... [s]econd, the plaintiff must establish that the speech was a substantial or motivating factor in the alleged retaliatory action," and third, that the defendant is then given "an opportunity to establish that the same action would have been taken in the absence of the employee's protected speech").

### A. Absence of Constitutionally Protected Speech

█ Defendants argue that Kristofek has not pointed to sufficient evidence to show that Kristofek engaged in any protected speech. In order for a public employee to show his speech is protected under the First Amendment, the employee must establish: (1) that "he made the speech as a private citizen," (2) that "the speech addressed a matter of public concern," and (3) that "his interest in expressing that speech was not outweighed by the state's interests as an employer in 'promoting effective and efficient public service.'" *Swetlik*, 738 F.3d at 825–26 (quot-

ing in part *Houskins v. Sheahan,* 549 F.3d 480, 490 (7th Cir. 2008))(stating that "[t]his last element is known as *Pickering* balancing" and that "[u]nder *Pickering* and its progeny, if an employer takes action against an employee for speech that the employer, based on an adequate investigation, reasonably believes to be false, the employer's interests outweigh the speaker's interests")(citing *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) and *Pickering v. Board of Ed. of Tp. High School Dist. 205, Will County, Illinois,* 391 U.S. 563, 567, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)); *see also Vose v. Kliment,* 506 F.3d 565, 571 (7th Cir. 2007)(holding that generally, a law enforcement officer, who has an obligation to report the misconduct of other officers, merely pursues his role in his official duties when complaining about such misconduct).

### 1. Failure to Speak on Matter of Public Concern

■ Defendants argue that Kristofek has not pointed to sufficient evidence to show that he spoke out regarding a matter of public concern. Generally, speech does not concern a matter of public concern if it is was "purely personal or vindicated only a personal interest." *Swetlik,* 738 F.3d at 827; *Kristofek v. Village of Orland Hills,* 712 F.3d 979, 984 (7th Cir. 2013)(stating that "[w]hether a statement rises to the level of public concern is a question of law, and in answering this question [the court] look[s] to the content, form, and context of the statement" and that "content remains the most important factor in determining whether speech addresses a matter of public concern")(internal quotations omitted). Aside from Kristofek's motivation in engaging in the speech in question, which clearly was to protect himself, the form and context show that the interests involved in the speech were those of Kristo-

fek, not the public. *See Kristofek,* 712 F.3d at 985 (stating that "motive alone does not conclusively determine whether a public employee's speech involves a matter of public concern"). Although corruption by public employees is usually a matter of public concern, the mere fact that Kristofek's speech related to accusations of public corruption does not mean that his speech is protected. *See Smith v. Fruin,* 28 F.3d 646, 651 (7th Cir. 1994)(stating that "the fact that an employee speaks up on a topic that may be deemed one of public import does not automatically render his remarks on that subject protected"). Kristofek claims that "he spoke on a matter of 'strong public concern'—public corruption...." (P SJ 14). While Kristofek's speech in its broadest sense may have touched on a matter of public concern in regard to public corruption, the undisputed facts show that at the time Kristofek engaged in the speech in question he was merely seeking to protect his own welfare and addressing issues concerning his personal interests. (P SJ 14); *see Bivens v. Trent,* 591 F.3d 555, 561 (7th Cir. 2010)(stating that "if the speech concerns a subject of public interest, but the *expression* addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern")(internal quotations omitted)(emphasis in original)(quoting *Marshall v. Porter County Plan Comm'n,* 32 F.3d 1215, 1219 (7th Cir. 1994)).

In the instant action, it is undisputed that Kristofek's concerns related solely to his personal situation. It is undisputed that, while employed for the Village, Kristofek participated in the Seminar. (PSF Par. 35). It is further undisputed that several months after the incident, based upon what Kristofek learned in the Seminar relating to his personal potential liability, he was concerned about his personal

civil and criminal liability relating to the incident, and that a few weeks after participating in the Seminar, Kristofek met with an attorney to discuss the matter. (P SF Par. 37, 41). The undisputed facts show that Kristofek then proceeded to speak with the FBI to protect himself from liability. (P SF Par. 39–41). Thus, the context of the speech by Kristofek indicates that it involves a personal interest and there is not sufficient evidence presented to show otherwise.

Nor has Kristofek shown that he held discourse with other members of the public regarding to his perception of alleged corruption. Kristofek claims that he "spoke with coworkers ... about Chief Scully's ticket fixing scheme and political favoritism." (P SJ 12). However, there is not sufficient evidence submitted to show any specific conversations with co-workers relating to public corruption by Scully. (R DSF Par. 82). It is also undisputed that Kristofek never submitted any formal complaints to the Mayor or to the Board of Trustees relating to any corruption. (R DSF Par. 101). Kristofek admitted that prior to his termination he did not "speak to any trustee or public official in the Village ... about any concerns [he] had concerning the decision to void the tickets and release" the Driver. (1/20/14: Kris Dep. 113). Kristofek claims he spoke to Blaha about the Arrest and Tickets, (R DSF Par. 101), but he testified that he discussed the technical aspects of the arrest and whether "it was a good arrest," and "was a good stop." (1/20/14: Kris. Dep. 138). Kristofek did not testify that he discussed any concerns of public corruption with Blaha. (1/20/14: Kris. Dep. 138).

The undisputed facts show that the speech made to the FBI related to protecting Kristofek from liability. Kristofek admitted at his deposition: "I was concerned about my personal liability...." (2/27/13: Kris. Dep. 78); (1/20/14: Kris. Dep. 119). Kristofek was thus looking out for himself when engaging in his speech and the purpose of the speech was to insulate Kristofek from personal liability. Kristofek's broad allegations as to public corruption at this stage of the proceedings are not sufficient to transform his speech into speech concerning the public interest. The undisputed facts do not, even when making inferences in favor of Kristofek, indicate that the objective of the speech was to address public corruption in a broader sense or that the speech involved an objective to reform the system. *See Kristofek*, 712 F.3d at 986 (stating that "[i]t is not a stretch to distinguish between the secret intent of the *speaker* and the objective of the *speech*" and that "[a] whistleblower's exclusive motive may be a desire for fame and a book deal, but it is also accurate to say that the main objective of his *speech* — given its content, context, and the manner in which it is delivered—is to reform the system")(emphasis in original). Thus, Kristofek has failed to point to sufficient evidence to show that he spoke out on a matter of public concern or point to any speech that would be protected speech under the First Amendment.

### 2. Weighing of Interests

Defendants argue that substantial state interests weigh in favor of Defendants. Even if a public employee speaks as a citizen on a matter of public concern, "the employer's action is considered to be justified and does not violate the First Amendment" if "the employee's interest in making the speech" doe not "outweigh the employer's interest in 'promoting the efficiency of the public services it performs through its employees.'" *Swetlik*, 738 F.3d at 827 (quoting *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011)); *Chrzanowski v. Bianchi*,

725 F.3d 734, 741 (7th Cir. 2013) (stating that court must balance "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees" and a "government employee's ability to speak freely, since public employees contribute to civil discussion by adding their well-informed views")(internal quotations omitted). The court, when conducting the balancing should consider factors such as: "(1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place, and manner of the speech; (5) the context within which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision-making; and (7) whether the speaker should be regarded as a member of the general public." *Volkman*, 736 F.3d at 1091–92 (quoting *Gustafson v. Jones*, 290 F.3d 895, 909 (7th Cir. 2002)).

The court recognizes that public corruption cannot be tolerated in any form and that those who expose such corruption should be encouraged and protected from retribution. The public relies on the integrity of its officials and public employees and the public must be protected against an abuse of the public's trust. However, in a case such as this, where an employee haphazardly lodges frivolous accusations of public corruption, other significant governmental interests come into play. As to an individual who comes forward seeking to expose corruption, to avoid a chilling effect, that individual should be protected, even if his or her allegations are eventually not substantiated. However, such individuals in taking such a momentous step of making accusations that could affect the professional lives of others, the efficient operation of governmental functions, and the utilization of law enforcement resources, must at least have knowledge of information and a colorable basis to make such accusations.

The Seventh Circuit has stated that there is a particularly urgent need for close teamwork among those involved in the "high stakes" field of law enforcement, and "when close working relationships are essential to fulfilling public responsibilities ... deference to the employer's judgment is appropriate." *Breuer v. Hart*, 909 F.2d 1035, 1041 (7th Cir. 1990). The Seventh Circuit has also recognized that "a police department has a more significant interest than the typical government employer in regulating the speech activities of its employees in order 'to promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence.'" *Kokkinis v. Ivkovich*, 185 F.3d 840, 845 (7th Cir. 1999)(quoting *Shands v. City of Kennett*, 993 F.2d 1337, 1344 (8th Cir. 1993)).

██ Kristofek's desire to protect himself from liability did not provide justification for him to ignore the chain of command at the Village and to cause disruption in the Village Police Department through his baseless accusations and actions. Kristofek's actions had a detrimental effect on the Village Police Department's ability to serve the community. Kristofek has thus not shown that his interest in making the speech outweighed the Village's interest in promoting the efficiency of the public services it performs through its employees.

### B. Recklessness by Kristofek

██ Defendants argue that the undisputed facts show that Kristofek's supposed concerns as to public corruption

were utterly baseless and that Kristofek acted recklessly in making his accusations as to public corruption. Generally, the speech of a public employee "is not protected where it is[ ] made with a reckless disregard for the truth...." Swetlik, 738 F.3d at 827 (quoting Brenner v. Brown, 36 F.3d 18, 20–21 (7th Cir. 1994))(internal quotations omitted). The court should consider whether speech was made recklessly without regard to its truth in assessing whether speech is protected. See McGreal v. Ostrov, 368 F.3d 657, 673 (7th Cir. 2004)(indicating "that statements were made with reckless indifference to their accuracy is not normally relevant to the question whether the issue was a matter of public concern"). While the issue of whether "an employee recklessly disregarded the truth in making a statement will often present a disputed factual issue," summary judgment may be appropriate if undisputed facts show that the employee acted without any legitimate basis. Swetlik, 738 F.3d at 827 (stating that "an employer may defeat a First Amendment retaliation claim if supervisors reasonably believed, after an adequate investigation, that [the employee's] testimony was false, even if it actually was true")(internal quotations omitted)(quoting Wright v. Illinois Dep't of Children & Family Servs., 40 F.3d 1492, 1506 (7th Cir. 1994)); see also Kodish v. Oakbrook Terrace Fire Protection Dist., 604 F.3d 490, 504 (7th Cir. 2010)(holding that "[s]peech of public importance only loses its First Amendment protection if the public employee knew it was false or made it in reckless disregard of the truth"); Gazarkiewicz v. Town of Kingsford Heights, Indiana, 359 F.3d 933, 942 (7th Cir. 2004)(holding that "speech of public importance only loses its First Amendment protection if the public employee knew it was false or made it in reckless disregard of the truth").

Kristofek uses onerous phrases in his filings such as "ticket fixing," "political corruption," and actions that were allegedly "politically motivated." (R DSF Par. 88, 100, 105); (P SJ 12). Kristofek has been allowed to conduct discovery in this case. However, in the end, no evidence to support such accusations has been discovered or presented by Kristofek. It is also apparent from the undisputed facts that Kristofek lacked even a legitimate basis when engaging in the speech in question to suspect that public corruption was involved relating to the incident.

### 1. Failure to Point to Illegal Conduct

The undisputed facts show that even in retrospect after conducting discovery in this case Kristofek cannot articulate any specific public corruption. The failure to be able to articulate such a theory even at this stage of the proceedings illustrates the fact that Kristofek lacked any legitimate basis to make his allegations of public corruption. Prior to his termination, Kristofek was asked at his deposition if it is "improper, illegal or corrupt for a citizen to call up an elected representative and ask that elected representative to inquire about the way her son was treated by a police officer?" (1/20/14: Kris. Dep. 58). Kristofek responded: "No, that in itself is not." (1/20/14: Kris. Dep. 58). Kristofek was then asked whether it would then be illegal for that elected representative to call another elected official to look into what happened to that constituent's child, and Kristofek could not explain why that would be illegal or amount to political corruption. (1/20/14: Kris. Dep. 58). Kristofek was asked at his deposition: "What was the nature of the favor that was provided?" (1/20/14: Kris. Dep. 80). Kristofek responded: "I have no idea." (1/20/14: Kris. Dep. 80). Kristofek was asked at the time of his deposition whether he had any information showing "political favoritism"

or "improper political motivation" and all Kristofek could offer was that he was suspicious because the Driver "escaped any type of prosecution, [or] any type of fine for a valid arrest." (1/20/14: Kris. Dep. 80–81). Kristofek was also asked at his deposition: "So you have absolutely no knowledge as to what motivated Chief Scully to make" the decision to void the Arrest and Tickets? (1/20/14: Kris. Dep. 114). Kristofek responded: "Correct" (1/20/14: Kris. Dep. 114).

Kristofek has cited no law that prohibited the mother of the Driver from exercising her constitutional rights to contact public officials and make a complaint about police misconduct, particularly in this instance relating to allegations of racial profiling of a young African–American male. Even after conducting discovery in this case, Kristofek is still unable to identify his allegations of improper conduct involving public corruption that led to the voiding of the Arrest and Tickets. (R DSF Par. 100). Kristofek also admits that the mother of the Driver has never met the Mayor, has never donated to his campaigns, has never worked on behalf of his reelection campaigns, and has never asked the Mayor for a political favor. (R DSF Par. 150). The most that Kristofek can offer is that at the time surrounding the Arrest he thought the voiding of such an arrest was "not normal" and was "abnormal" (R DSF Par. 100, 105); (R SCSAF Par. 35). However, Kristofek has not pointed to sufficient evidence to show that Scully acted improperly or violated any law relating to the voiding of the Arrest and Tickets based on information available to Scully, including the allegations of racial profiling by a probationary officer. Even if Kristofek believed that the incident was not handled as other similar arrests during Kristofek's limited experience as a probationary officer, that did not mean that Kristofek was authorized to engage in broad speculation and begin accusing officials of public corruption. In fact, the circumstances relating to the Arrest were unusual and Scully had the discretion to take actions to protect both the department and the community. Kristofek has not identified any other similar arrests for having an expired registration and no evidence of insurance where a Village police officer was accused of engaging in racial profiling. Kristofek in fact admitted at his deposition that he was not aware of any other occasion where a police chief was confronted with allegations of racial profiling and, yet the police chief chose to move forward with such a case and not void the arrest and tickets. (1/20/14: Kris. Dep. 78).

Kristofek also failed to point to sufficient evidence that showed that Scully lacked discretionary authority to void the Arrest and Tickets. (R SCSAF Par. 25). As explained above, Scully had information relating to a citizen complaint of racial profiling leading to an arrest for tickets that involved an unusual arrest. Defendants correctly point out that the Village faced potential civil liability based on such a complaint. Kristofek admitted at his deposition that he could not point to any law or ordinance that prohibited Scully from exercising his discretion and voiding the Arrest and Tickets. (1/20/14: Kris. Dep. 97). Kristofek makes arguments as to what is routine when a police chief wants to void an arrest, but again Kristofek fails to point to evidence showing that Scully lacked the authority to act as he did. Kristofek also argues in retrospect that Scully did not technically follow certain state laws relating to the procedures for voiding arrests. However, such a statement, even if true, does not mean that Scully engaged in public corruption. Kristofek has not shown that Scully violated any law. In addition, the record also

shows that such an argument is nothing more than post hoc explanation on the part of Kristofek. The record shows that even at the time of his deposition, Kristofek was not aware of any law that Scully had violated. (2/27/13: Kris. Dep. 72–73). Thus, Kristofek has not pointed to evidence showing that Scully acted unlawfully or was engaged in any public corruption.

### 2. Lack of Suspicious Conduct

Kristofek also admits that Scully did not engage in suspicious conduct that would indicate an attempt to cover up the voiding of the Arrest and Tickets. For example, it is undisputed that when Kristofek met with Scully after Kristofek had attended the Seminar in April 2011 (April 2011 Meeting) and voiced his concerns, Scully did not tell Kristofek to keep quiet about the Arrest and Tickets or threaten Kristofek. It is undisputed that when Kristofek voiced concerns about public corruption, Scully told Kristofek: "if you want to report this, go ahead," and provided Kristofek with a list of numbers to call including the Illinois State Police Integrity Section. (1/20/14: Kris. Dep. 139). Kristofek had made references to him being ordered to "delete evidence" and "destroy the evidence," as though to insinuate that Defendants engaged in some sort of coverup. (2/27/13: Kris. Dep. 78). However, Kristofek has now been allowed to conduct full discovery and gather evidence and absent from the record is any evidence of any coverup by Defendants. Even if during the normal course of administrative process materials may have been routinely disposed of does not mean that Defendants were seeking to delete or hide evidence. Scully did not attempt to hide the Arrest and Tickets and documentation relating to the Arrest and Tickets remain as of this date. There is no coverup by Scully and it is undisputed that Scully, in accordance with established procedures sent a letter to the Clerk of Court identifying the Tickets and advising the Clerk of Court that the Tickets had been voided. (R DSF Par. 76).

### 3. Kristofek's Personal Dissatisfaction

The undisputed facts show that the real underlying cause for Kristofek's action was that he believed that Scully made an error and Kristofek believed that Scully did not handle the issue of the Arrest and Tickets properly. Kristofek acknowledged at his deposition that he "disagreed with the manner in which Chief Scully exercised his discretion." (1/20/14: Kris. Dep. 113). Kristofek contends that Scully ordered Blaha to void the Arrest and Tickets before Scully had done anything "to investigate the validity of the tickets issued to" the Driver. (PSF Par. 32). Even this case were submitted to the trier of fact and the trier of fact concluded that Scully did not investigate the validity of the Tickets before voiding them, the undisputed facts show that aside from the technical validity of the Arrest and Tickets, Scully had sufficient information to exercise his discretion regarding the incident, including allegations of racial profiling. It is undisputed, for example, that Scully knew that Kristofek had chosen to arrest the Driver after issuing tickets for registration and insurance violations. Although such an arrest for registration and insurance violations would be unusual, there is no evidence submitted showing that a police officer is barred from arresting an individual for such violations under certain circumstances. However, in this case, the undisputed facts show that Scully became aware that the mother of the Driver was making complaints, accusing the Village Police of racial profiling. (R DSF Par. 57–58). Scully thus had information concerning the Arrest and Tickets when he decided to void the Arrest. Just

as Kristofek may have had the discretion to arrest the Driver for such registration and insurance violations, Scully had the discretion to exercise his authority relating to such Arrest based on his experience and his position as Chief. Kristofek also contends that Scully made a mistake when he informed the Clerk of Court that the Tickets had been voided. Kristofek contends that Scully inaccurately stated that the Tickets were issued "in error" because Kristofek believes that he "made a good arrest." (R DSF Par. 76). Even if Kristofek could point to evidence to show that Scully had administratively made a mistake in the Letter relating to the reason for the voiding of the Tickets, that, in and of itself, would not indicate public corruption. The mere fact that Kristofek, a probationary officer with limited experience, questioned the wisdom of how the Village Police Department was being run, did not provide a reasonable basis to conclude that there was public corruption.

The case is not about whether there were technical violations relating to the incident or whether the matter should have been handled differently. This case is about Kristofek accusing Defendants of public corruption. Kristofek makes a lot of arguments about the way the matter was handled, but fails to provide a basis to support his claims of constitutional violations. Kristofek's dissatisfaction with how the Arrest and Tickets were handled does not provide a basis to support the claims in the instant action.

### 4. Lack of Action by Federal Authorities

It is undisputed that Kristofek has not pointed to evidence showing that any action was taken against Defendants by the FBI or federal authorities. (R SCSAF Par. 14). Kristofek argues that the issue is not resolved and is still disputed because

Defendants are improperly relying on an FBI report, which is hearsay. (R SCSAF Par. 14). At the pleading stage, the plaintiff gets the benefit of the doubt based on allegations. However, as the Seventh Circuit has repeatedly stated the summary judgment stage "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Diadenko v. Folino*, 741 F.3d 751, 757–58 (7th Cir. 2013)(quoting *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008))(internal quotations omitted). Defendants have presented evidence showing that they have not faced an action by the FBI relating to the Arrest. Kristofek has not pointed to evidence showing that federal authorities have taken any action against Defendants or that Defendants have been found to have engaged in public corruption. Based on the above, the undisputed facts show that Kristofek lacked any legitimate basis to make his false accusations of public corruption.

### C. Causation

 Defendants argue that the undisputed facts show that Kristofek's speech made to the FBI was not the cause of his termination and was not a motivating factor in his termination. Defendants contend that Scully sought to terminate Kristofek's employment for making baseless accusations of corruption, failing to properly search a prisoner who was carrying a firearm, and failing to properly handle a traffic stop without complaint. (DSF Par. 91). In addition to Kristofek's baseless accusations of public corruption, the undisputed evidence shows that there was more than one reason to terminate Kristofek's employment during his probationary period. The court also notes that Kristofek disputes that he was working in his probationary period. (R DSF Par. 2). However, Kristofek cites no evidence to support

such an assertion other than his self-serving claim that Scully stated otherwise on one occasion. (R DSF Par. 2). Kristofek admits that on one occasion, "a handgun was discovered in the backseat of his squad car after he had parked the squad [car] and gone off duty." (R SCSAF Par. 10). In addition, as indicated above, it is undisputed that in response to the formal complaint filed by the mother of the Driver an internal investigation was conducted regarding the Arrest and "policy violations were found." (R DSF Par. 75).

Defendants have also presented evidence showing that Scully did not learn of Kristofek's contact with the FBI until after he had decided to recommend Kristofek's termination. (SCSAF Par. 13). It is undisputed that prior to the April 2011 Meeting, Scully had sought approval for the termination of Kristofek's employment and had received approval. (R DSF Par. 122–125). Kristofek admitted at his deposition that, prior to the April 2011 Meeting, he had not told Scully that he had talked to the FBI. (2/27/13: Kris. Dep. 99–100). Kristofek has not pointed to sufficient evidence to show that Scully was aware of Kristofek's contact with the FBI prior to his decision to recommend the termination of Kristofek's employment. Kristofek has failed to point to sufficient evidence for a reasonable trier of fact to infer, prior to the termination determination, that Scully was aware that Kristofek had gone to the FBI. The undisputed facts show that Kristofek was a police officer in his probationary period with poor performance and who was making baseless accusations against Village officials and employees. Thus, even if Scully was aware that Kristofek had contacted the FBI, there were ample justifiable reasons to terminate Kristofek's employment. Kristofek has not pointed to sufficient evidence to even suggest when making reasonable inferences in his favor that any

protected speech was a motivating factor in his termination.

### D. Qualified Immunity

■■■■■ Defendants argue that Scully is protected from liability by qualified immunity. When a governmental actor performs "discretionary functions" that actor is protected by qualified immunity. *Volkman*, 736 F.3d at 1089. To show that a defendant is not shielded from liability by qualified immunity, a plaintiff must show: (1) that "the defendants' conduct violated a constitutional right" and (2) that the "particular constitutional right was clearly established at the time of the alleged violation." *Volkman*, 736 F.3d at 1091 (internal quotations omitted); *see also Lunini v. Grayeb*, 395 F.3d 761, 769 (7th Cir. 2005)(indicating that it is the plaintiff's burden to show that a right was clearly established). In the instant action, Scully is protected by qualified immunity because Kristofek has failed to point to sufficient evidence to show that Scully violated Kristofek's constitutional rights. Therefore, Defendants' motion for summary judgment on the claim in Count V is granted.

### II. Monell Claim

■■■■■ Defendants contend that Kristofek has failed to point to sufficient evidence to support a *Monell* claim. For a *Monell* claim, a plaintiff must establish: "(1) that *he* suffered a constitutional injury, and (2) that the City authorized or maintained a custom" or policy "of approving the unconstitutional conduct." *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014)(emphasis in original); *Teesdale v. City of Chicago*, 690 F.3d 829, 833–34 (7th Cir. 2012). To establish an official custom or policy sufficient for a *Monell* claim, a plaintiff must show that there was: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a wide-

spread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Teesdale*, 690 F.3d at 833–34 (internal quotations omitted)(quoting *Estate of Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)).

In the instant action, Kristofek's *Monell* claim is doomed at the outset because he has failed to point to sufficient evidence to show that his constitutional rights were violated. *See Petty*, 754 F.3d at 424 (stating that "if no constitutional violation occurred in the first place, a *Monell* claim cannot be supported"). Nor has Kristofek pointed to evidence of any policy or practice underlying his termination. Finally, Kristofek has not shown that Scully was a person with policy-making authority or even had de facto authority. The undisputed facts show that the Village Board is the policy-maker for the Village. Therefore, the Village's motion for summary judgment on the *Monell* claim is granted.

### III. Remaining State Law Claims

Having resolved the federal claims in this case, the court must determine whether to continue to exercise supplemental jurisdiction over the remaining state law claims. Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251–252 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial," the pendent claims should be left to the state courts). The Seventh Circuit has indicated that there is no " 'presumption' in favor of relinquishing supplemental jurisdiction...." *Williams*

*Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906–07 (7th Cir. 2007). The Seventh Circuit has stated that, In exercising its discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources...." *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994). The court has considered all of the pertinent factors and, as a matter of discretion, the court declines to exercise supplemental jurisdiction over the remaining state law claims. Such claims are therefore remanded to state court.

### CONCLUSION

Based on the foregoing analysis, the Village's motion for summary judgment is granted, Scully's motion for summary judgment is granted, Kristofek's motion for partial summary judgment is denied, and the remaining state law claims are remanded to state court.