In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 19-2534 & 19-3269

DENEAN ADAMS,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

BOARD OF EDUCATION OF HARVEY SCHOOL DISTRICT 152, *et al.*,

*Defendants-Appellants, Cross-Appellees.*

---

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 CV 8144 — **Sharon Johnson Coleman**, *Judge.*

---

ARGUED JUNE 4, 2020 — DECIDED AUGUST 3, 2020

---

Before SYKES, *Chief Judge*, and EASTERBROOK and BARRETT, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Denean Adams was superintendent of the Harvey, Illinois, public schools from July 2013 through June 2016. Her tenure ended unhappily: in July 2015 the Board of Education revoked an offer to extend her three-year contract; later that educational year it blocked her email account and tried to pretend that she did not exist. Indeed, the Board told state education officials in spring 2016 that

she was no longer superintendent. These and related events put her under a lot of stress. She took medical leave in March 2016 and never returned to work. But she did file this suit under 42 U.S.C. §1983. A jury awarded $400,000 in damages after concluding that the Board and its members had violated the First Amendment (applied to the states through the Fourteenth). The district court declined to set aside that award, see 2019 U.S. Dist. LEXIS 117428 (N.D. Ill. July 15, 2019), and added about $190,000 in attorneys' fees. 2019 U.S. Dist. LEXIS 122282 (N.D. Ill. July 23, 2019). Both sides have appealed.

Adams's problems began in spring 2015, when she asked the Board to approve a forensic audit of the District's expenditures. The Board allowed Adams to ask auditing firms to propose the scope and cost of work (this is called a "request for proposals" in government procurement). But the afternoon of July 9, after Adams submitted the paperwork to the Board, member Tyrone Rogers called her on her District-issued cell phone and said that she was "itching for an ass-kicking". (So Adams testified, and given the jury's verdict we must accept her account.) Someone called the police, and a detective met with Adams in her office on July 10 to discuss the report. Adams discussed the subject with the Board's president and later filed a formal complaint with the police. (The parties disagree about how the subject initially came to the attention of the police.) Janet Rogers, another member of the Board (and Tyrone's wife), also came to Adams's office on July 10 and stated that she had some concerns about Adams's performance as superintendent. By the Board's July 22 meeting relations between Adams and the Board had soured and a contract extension was off the table. In December 2015 Adams suspended the District's business

manager for financial irregularities. That was apparently the last straw. Later that month the Board served Adams with a notice that her contract would not be renewed and, though it did not fire her, began to bypass her whenever possible.

Adams asks us to dismiss the Board's appeal for lack of jurisdiction. The judgment was entered on November 6, 2018, and on December 4 the Board filed a motion seeking relief under Fed. R. Civ. P. 50 and 59. (The Board filed two documents, one captioned with each rule, but this was effectively one motion relying on two rules, and the district court so treated it.) The district court denied the motion on July 15, 2019, and the Board appealed on August 8. No problem so far. But Adams contends that the December 4 motion rehashed arguments that the Board had made, and the district judge had rejected, earlier. That makes it equivalent to a sequential post-judgment motion, according to Adams—and because only one post-judgment motion extends the time for appeal under Fed. R. App. P. 4(a)(4)(A), see *Charles v. Daley*, 799 F.2d 343 (7th Cir. 1986), Adams contends that the appeal of August 8 is late and must be dismissed.

This argument misunderstands the point of decisions such as *Charles*, which dealt with successive post-judgment motions. The Board is not seeking multiple delays of the time to appeal. That another Rule 50 motion had been filed and denied before the entry of final judgment does not affect the calculation of time under Rule 4(a)(4), which deals with post-judgment motions. A motion to reconsider under Rule 59 is—well, there's no better name than a motion to *reconsider*. A litigant is entitled to ask a court to change decisions that influenced the judgment. It is *new* arguments that get a litigant into trouble, for those have been waived or forfeited;

repeating old arguments is a standard practice, part of what the Supreme Court recently called a unitary process to produce one complete and correct adjudication. *Banister v. Davis*, 140 S. Ct. 1698 (2020). That a given district judge telegraphed a disposition to deny such a post-judgment motion does not affect appellate jurisdiction; litigants are entitled to ask judges to change their minds.

The Board's principal argument on the merits is that a report to the police is a personal grievance, not a matter of public concern, and therefore falls outside the scope of the First Amendment. That personal grievances are the subject of state law (torts and contracts) rather than the First Amendment is well established. See, e.g., *Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Board of Education*, 391 U.S. 563 (1968). Yet the district court did not rule otherwise.

Suppose we look at the police report in isolation. This was not a straightforward report of crime—for example, notice of a burglary or robbery. It was a report by the superintendent of a school district that she had been threatened with violence by a member of the school board. The members are elected officials, whose constituents could be influenced by news that one of their representatives proposed to substitute violence for the normal process of voting. And a potential for physical altercations between public officials (the superintendent and an elected member) implies that an important public institution was not working properly. This is a legitimate subject of public concern. Cf. *Chrzanowski v. Bianchi*, 725 F.3d 734 (7th Cir. 2013) (testimony in a civil or criminal case, or grand jury investigation, is protected speech).

More: it would be a mistake to look at the police report in isolation. The problem began when Adams proposed a forensic audit, as Adams told the police. The very idea of such an audit seems to have unsettled at least one member of the Board, who wanted the audit's proponent gone (or the proposal withdrawn) before anyone could delve deeply into the school district's finances. This led to a dispute about the superintendent's tenure and to what a reasonable observer could understand as the superintendent's constructive discharge before her contractual term ended. All of these are subjects of public interest. When the superintendent suspended the business manager, the gap between superintendent and Board became unbridgeable. Parents and others who vote for members of school boards need to know how their institutions are working. The police report, and the controversy within the Board more generally, readily could have affected the outcome of elections as well as the daily management of the school system.

The link between the potential audit and the threat was reported to the police. If this means that Adams had a mixed motive—personal in part and professional in part—that does not render her speech unprotected. See, e.g., *Kristofek v. Orland Hills*, 712 F.3d 979, 984 (7th Cir. 2013). It is not enough that the public have some interest—many a newspaper has been sold by exposing private matters to an inquisitive public. Instead the question is whether the speech concerns public affairs as *Connick* understands the public/private distinction. That the detective recalls the report differently from Adams does not take it outside the scope of the First Amendment. They agree that the report mentioned the audit as well as the threat; that's enough to put her speech on the public-concern side of *Connick*'s line.

The best contrary argument for the Board is not that the public is unconcerned about such matters, but that everything (except the police report) concerned the litigants' official duties. *Garcetti v. Ceballos*, 547 U.S. 410 (2006), holds that the First Amendment does not regulate how public employers manage their workforces, even when that management involves telling others what to say or avoid saying. Words said, or omitted, as part of official duties are the subject of state rather than federal law under *Ceballos*. Almost everything that happened in this dispute is on-the-job speech within the scope of the superintendent's and members' duties. But the Board did not press in the district court any argument under *Ceballos*, and its opening brief on appeal does not even cite that decision. The Board's reply brief does rely on it, but that's too late. Litigants must present their arguments in their opening briefs, so that the other side can reply. We put *Ceballos* to one side.

Our conclusion that Adams's speech is within the scope of the First Amendment means that the evidence presented a jury question about whether her statements caused the end of her employment. The record permitted a reasonable jury to find that they did. Likewise a reasonable jury could conclude that an ordinary employee in Adams's position would be deterred from speaking by the prospect of losing her job.

The Board's other arguments are feeble. It contends, for example, that Adams lacks a good claim because the proposal to extend her contract through June 2017 was properly rescinded (or never properly made in the first place). But the jury did not award damages under a contract theory, nor did the district judge permit the jury to consider Adams's contention (under the Due Process Clause of the Fourteenth

Amendment) that the Board should have offered a hearing before rescinding the proposed contract extension. The jury was permitted to consider the possibility that Adams would have remained on the job longer had she kept silent, but that concerns damages on her First Amendment theory. Damages for a violation of the First Amendment are not limited by the duration of contracts.

The Board also asserts that the award of $400,000 is excessive, but our standard of review is highly deferential to the jury's evaluation. The district judge explained why this award is similar to those in other, comparable cases. No more need be said.

This brings us to Adams's cross-appeal, which concerns the award of attorneys' fees under 42 U.S.C. §1988. The district court determined the number of hours that counsel properly devoted to the claims on which Adams prevailed (she lost on several claims against all defendants and lost outright against some defendants) and multiplied this by the hourly rate for the services of Jerome M. Davis, who represented her. Davis told the judge that he has charged some paying clients as much as $265 per hour, but he asked for what he called an "enhancement" to $550 to reflect the risk of loss. Multiplying $550 by the number of hours Davis said he devoted to the case produced roughly $550,000. The judge awarded some $190,000, derived from multiplying $265 per hour by a smaller base of compensable hours. Adams contends in the cross-appeal that Davis should have received credit for more hours and a rate of at least $385 per hour, plus a 25% bonus, for a total of roughly $485,000.

Only a few words are necessary to dispose of this outlandish request—outlandish because the request for two en-

hancements (a higher hourly rate and a bonus) contradicts the Supreme Court's ruling that enhancements are not permitted under fee-shifting statutes. See *Burlington v. Dague*, 505 U.S. 557 (1992). They may be appropriate in common-fund cases, in which the fee comes out of the prevailing side's winnings, but are forbidden when the defendant pays. The district court thought it a stretch to award even $265 per hour, given the weakness of the evidence supporting that rate for Davis's time; the judge did not abuse her discretion or commit a legal error in declining to award more. Nor did the judge abuse her discretion or make a clearly erroneous finding in counting the number of hours reasonably devoted to pursuing the claims on which Adams prevailed.

AFFIRMED